[This opinion has been published in *Ohio Official Reports* at 73 Ohio St.3d 97.]

**K.S.T. Oil & Gas Co., Inc., Appellant, *v*. Tracy, Tax Commr, Appellee.**

**CVAS Drilling, Inc., Appellant, v. Tracy, Tax Commr., Appellee.**

**[Cite as *K.S.T. Oil & Gas Co. v. Tracy*, 1995-Ohio-99.]**

*Taxation—Sales and use taxes—Items not used directly in exploring for or producing crude oil or natural gas subject to taxation—R.C. 5739.01(E)(2), applied.*

(Nos. 94-1454, 94-1455 and 94-1456—Submitted March 30, 1995—Decided August 16, 1995.)

Appeals from the Board of Tax Appeals, Nos. 92-A-346, 92-A-347 and 92-A-348.

———————————

{¶ 1} K.S.T. Oil & Gas, Inc., and CVAS Drilling, Inc., which merged into K.S.T. Oil & Gas, Inc. in 1986 (collectively "KST"), appellants, explore for, drill, and produce natural gas and crude oil for resale. In this business, KST builds roads to drilling sites, prepares the sites, including digging pits to hold drilling waste, drills the wells, and fractures the oil formation with pressurized water.

{¶ 2} After digging the pits for the drilling waste, KST lines the pits with plastic tarp liner ("pit liner"). Following fracture of the oil formation with water, KST pumps the water, which by then contains salt and drilling waste, into the lined pit. It dumps kiln dust, which is a by-product of cement production, into the pit, mixes the dust with the fluid in the pit, and allows the mixture to harden. After this, the material will not seep into the soil. KST then backfills dirt over the hardened mass.

{¶ 3} On finding a producing well, KST pumps the oil, which usually includes some brine, from the well into a storage tank. In the tanks, the oil separates from the brine, and, when the tank contains sufficient oil, KST draws off the oil

into trucks for delivery to its customers. The tanks have ladders, stairways, platforms and brackets attached to them so employees can reach locations from which they can monitor the oil level in the tanks.

{¶ 4} KST sells natural gas, also one of the products from its drilling, to schools that allow KST to drill on their property. In selling this natural gas, KST installs gas regulators. These regulators reduce the pressure of the natural gas entering the schools' lines.

{¶ 5} The Tax Commissioner, appellee, audited K.S.T. Oil & Gas Co., Inc. for the period January 1, 1985 through December 31, 1987 and CVAS Drilling, Inc. for the period January 1, 1985 through December 31, 1986. The commissioner assessed them for purchases of pit liners and kiln dust, paint and maintenance supplies, gas regulators, slag for roads and drilling rig support, and ladders, stairways, platforms and brackets for the storage tanks. On appeal, the Board of Tax Appeals ("BTA") affirmed the assessments. The BTA held that KST did not use these items directly in exploring for or producing crude oil or natural gas.

{¶ 6} These causes are before this court upon appeals as a matter of right.

_____

*Buckingham, Doolittle & Burroughs* and *Thomas N. Julius*, for appellants.

*Betty D. Montgomery*, Attorney General, and *Thelma Thomas Price,* Assistant Attorney General, for appellee.

_____

***Per Curiam.***

{¶ 7} For the reasons that follow, we affirm the BTA's decision.

{¶ 8} KST seeks exemption for these items under R.C. 5739.01(E)(2), which states:

"(E) 'Retail sale' and 'sales at retail' include all sales except those in which the purpose of the consumer is:

"***

2

"(2) *** to use or consumer the thing transferred directly in *** production of crude oil and natural gas *** and services in the exploration for, and production of, crude oil and natural gas, for others are deemed engaged directly in *** exploration for, and production of, crude oil and natural gas ***."

{¶ 9} In *Kilbarger Constr., Inc. v. Limbach* (1988), 37 Ohio St.3d 234, 525 N.E. 2d 483,we employed the reasoning of our manufacturing- and mining-exception cases to determine whether a taxpayer used disputed items to explore for or produce crude oil and natural gas. In particular, we approved the direct-use test found in *Youngstown Bldg. Material & Fuel Co., v. Bowers* (1958), 167 Ohio St. 363, 5 O.O.2d 3, 149 N.E.2d 1. "Under this test, the BTA must determine when the actual exploration for and production of crude oil and natural gas begins and ends, and whether the property is used or consumed during and in that period." *Lyons v. Limbach* (1988), 40 Ohio St.3d 92, 93, 532 N.E. 2d 106, 108. In *Kilbarger*, paragraph one of the syllabus, we held that exploring for or producing crude oil and natural gas begins when actual drilling commences.

{¶ 10} In applying these cases, we, first, rule that KST used the pit liners and kiln dust to remove waste product from the drilling process. KST also reclaimed the site with these items. In *Powhatan Mining Co. v. Peck* (1953), 160 Ohio St. 389, 52 O.O. 246, 116 N.E. 2d 426, we held that specially designed trucks that transported a useless by-product from a coal cleaning plant were not used directly in production. In *Lyons v. Limbach, supra*, we held that reclamation equipment and supplies are not used directly in producing crude oil or natural gas. Under these cases, we hold that KST did not use the pit liners and kiln dust directly in producing or exploring for crude oil and natural gas.

{¶ 11} Next, KST purchased the slag to build roads to the drilling site and to support a drilling rig. In *Kilbarger*, we held that bulldozers used to clear a path to the drilling site and to clear and level the site were preliminary to the drilling. As the BTA found, slag is supportive of the production process. KST did not use the

slag directly in producing or exploring for crude oil and natural gas; it used the slag preliminarily to production and exploration.

{¶ 12} As to the gas regulators, the BTA found that KST used them in marketing the gas and not directly in production. We agree with this finding. KST did not reveal how the regulators were used in production. Moreover, KST did not mention in its notice of appeal to the BTA that these regulators were exempt for being sold to a nonprofit organization, as it argues here. We have no jurisdiction to consider this latter claim. *Mid Am. Machine Tools, Inc. v. Lindley* (1981), 68 Ohio St. 2d 91, 22 O.O. 3d 303, 428 N.E. 2d 433.

{¶ 13} Furthermore, as to the paint and maintenance supplies, in *Std. Oil Co. v. Peck* (1955), 163 Ohio St. 63, 56 O.O. 56, 125 N.E. 2d 342, we ruled that a crane used to assist in maintaining production facilities was not used directly in production. Under this case, paint and maintenance supplies are not used directly in production.

{¶ 14} Next, as to the ladders, stairs, platforms and brackets attached to the storage tanks, in *Southwestern Portland Cement Co. v. Lindley* (1981), 67 Ohio St.2d 417, 21 O.O. 3d 261, 424 N.E. 2d 304, we cited approvingly *Timken Co. v. Kosydar* (Oct. 28, 1975), BTA No. D-7, unreported. In *Timken*, the BTA ruled that catwalks, ladders, stairs, platforms and handrails that provided access for employees to processing areas were not used directly in or adjunct to production. We follow that decision and deny exemption for these similar items in this case.

{¶ 15} Finally, KST argues that the commissioner abused his discretion in not entirely abating the penalty. KST does not persuade us that the BTA erred in concluding that the commissioner did not abuse his discretion in remitting only part of the penalty. *Jennings & Churella Constr. Co. v. Lindley* (1984), 10 Ohio St.3d 67, 10 OBR 357, 461 N.E. 2d 897.

{¶ 16} Accordingly, we affirm the BTA's decisions.

*Decisions affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY and COOK, JJ., concur.

WRIGHT and PFEIFER, JJ., dissent in part and concur in part.

————————————

**WRIGHT, J., dissenting in part and concurring in part.**

{¶ 17} I concur in the majority's affirmation of the BTA's findings with respect to the ladders, stairways, platforms and brackets. Likewise, I agree with the BTA's treatment of the cleaning and painting items. I take this posture because this court should give strong deference to the board's findings despite my own reservations concerning their propriety. Similarly, a finding that the slag used to build roads to the drilling site and to support a drilling rig is taxable is not against the manifest weight of the evidence given the clear mandate of R.C. 5739.01(E)(2).

{¶ 18} However, I would exempt the pit liners and kiln dust. I say this because, absent these items, the wells involved could not have been drilled and the gas and oil products could not have been removed from the formation that contained them.

{¶ 19} I reluctantly concur with the BTA's affirmation of the commissioner's refusal to entirely abate the penalty here, despite the effort to comply with the Tax Commissioner to resolve the issues in dispute, many of which were of first import.

PFEIFER, J., concurs in the foregoing opinion.

————————————