[Cite as *Defender Sec. Co. v. Testa*, 2019-Ohio-725.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Defender Security Company, d/b/a Defender Direct, | : | |
| | : | |
| Appellant-Appellant, | | |
| | : | No. 18AP-238 |
| v. | | (B.T.A. No. 2016-1030) |
| | : | |
| Joseph W. Testa, | | REGULAR CALENDAR |
| Tax Commissioner of Ohio, | : | |
| | | |
| Appellee-Appellee. | : | |

## D E C I S I O N

### Rendered on February 28, 2019

**On brief:** *Buckingham, Doolittle & Burroughs, LLC, Richard B. Fry, III*, and *Stephen A. Dimengo*, for appellant. **Argued:** *Richard B. Fry, III.*

**On brief:** [*Dave Yost,*] Attorney General, and *Barton A. Hubbard*, for appellee. **Argued:** *Barton A. Hubbard.*

### APPEAL from the Ohio Board of Tax Appeals

BRUNNER, J.

{¶ 1} Appellant-appellant, Defender Security Company d/b/a Defender Direct ("Defender" or "Defender Direct"), appeals from a decision of the Ohio Board of Tax Appeals ("the BTA") entered on March 6, 2018. The BTA in its decision affirmed the final determination of appellee-appellee, Joseph W. Testa, Tax Commissioner of Ohio ("the commissioner"), denying Defender's application for the refund of commercial activity tax ("CAT") Defender had paid on certain gross receipts from January 2010 through December 2013. For the following reasons, we affirm the BTA's decision.

## I.  FACTS AND PROCEDURAL BACKGROUND

{¶ 2}  This matter arose from the commissioner's final determination denying Defender's request for a refund of the CAT that had been assessed on certain gross receipts Defender had received as fees from ADT Security Services, Inc. ("ADT") in exchange for selling Alarm Service Contracts to Ohio residents during tax years 2010 through 2013.  The BTA affirmed the commissioner's final determination. We note at the outset that the record reflects that Defender withdrew its request for a refund for tax year 2010 before the commissioner issued his final determination.  Consequently, the appeal heard by the BTA and presented now to this Court concerns only the CAT refund requested for tax years 2011, 2012, and 2013.[1]

{¶ 3}  The relevant facts and procedural posture of this matter are largely undisputed. Defender is an authorized dealer of security monitoring services provided by ADT.  Defender originates ADT Alarm Services Contracts to consumers in Ohio and sells them to ADT.  ADT receives the contracts in Colorado and provides security services from its monitoring centers located outside Ohio.

{¶ 4}  Defender markets ADT residential services to consumers via the Internet, direct mail, and print advertisements.  Defender does not have any walk-in locations where consumers can purchase ADT's monitoring service; a consumer interested in purchasing the security service telephones Defender's call centers in Indianapolis or Kentucky.  A consumer purchasing ADT services pays an initial fee during the telephone call to Defender and makes an appointment for a Defender security advisor to install the equipment.[2] Defender's security advisor then meets with the consumer at the consumer's location to install the security equipment and to obtain the consumer's signature on the Alarm Services Contract, which is an ADT form contract that informs the consumer that the contract will be assigned to ADT.  Defender's security advisor explains the level of security equipment available, and the consumer decides which equipment to purchase.  By signing the Alarm

---

[1] The BTA states in its decision, because Defender withdrew its application for refund of amounts paid related to tax year 2010 before the issuance of the final determination, the BTA confined its decision to the remaining tax years of 2011 through 2014.

[2] Defender states in its appeal brief that Defender occasionally offers promotions in which the initial fee is reduced to $49.  The initial fee is refundable if the consumer does not finalize the purchase.

Services Contract, the consumer agrees to purchase ADT service for three years. In all cases, Defender collects the price of the security equipment directly from the consumer.

{¶ 5} Defender sends the signed Alarm Services Contract to its headquarters in Indianapolis, where it is reviewed, consolidated into batches, and sent to ADT in Colorado. ADT is not bound to the consumer's Alarm Services Contract until ADT accepts the contract.[3] If ADT accepts the contract, Defender sells the contract to ADT. The contract includes: (1) the right to provide security monitoring service for a monthly fee, (2) the right to use the customer information, and (3) the customer goodwill. ADT then provides security monitoring services to the consumer from one of its monitoring centers located in Florida, New York, Tennessee, Texas, or Canada. ADT invoices the consumer for the security monitoring services and collects the monthly fee from the consumer.

{¶ 6} In exchange for the sales of Alarm Services Contracts, Defender receives from ADT a fee referred to by the parties as contract sales receipts, base fee or ADT funding. The amount of the contract sales receipts is determined based upon the level of service purchased and the consumer's credit score.

{¶ 7} It is undisputed that ADT has no property or employees in Ohio. Defender argues, therefore, that all of its interactions with ADT occur outside Ohio.

{¶ 8} On or about April 21, 2014, Defender submitted an application for a CAT refund to the Ohio Department of Taxation ("ODT") pursuant to R.C. 5751.08. Defender requested a refund in the amount of $88,588.66, which it calculated it was owed from Defender's CAT payments argued to have been paid erroneously for the period of January 1, 2010 through December 31, 2013 based on fees it received from ADT for sales of Alarm Services Contracts in Ohio (also referred to as "ADT Funding"). Defender attached numerous documents in support of its application, including a narrative providing background for the requested refund that included this explanatory language:

> Defender Direct receives the following two types of revenue: (1) from subscribers for the sale and installation of security / alarm equipment; and (2) Customer Account Revenue received from

---

[3] A minority of the Alarm Services Contracts (five to six percent) are not sold to ADT due to issues with the consumer or completeness of the contract. Defender provides the security service directly to these consumers, although it purchases the service from ADT and resells it to the consumer since Defender does not have the equipment or infrastructure to provide the security service. Defender asserts that the receipts from providing service to these Ohio consumers is not at issue because the receipts are properly subject to Ohio's CAT since Defender's purchaser is the Ohio consumer, not ADT.

ADT. Defender Direct has paid Ohio commercial activity tax ("CAT") on both types of revenue when the subscriber is located in Ohio. However, Defender Direct incorrectly sitused the Customer Account Revenue to Ohio since ADT receives the benefit of the customer account outside of Ohio. Accordingly, Defender Direct is entitled to a refund of CAT paid on such revenue received from the sale of customer accounts to ADT.

### Situsing Customer Account Revenue

Defender Direct's sale of customer accounts to ADT is the sale of an intangible. Fn. 1 *See e.g.,* I.R.C. § 197(d)(2) (definition of customer-based intangible includes the value resulting from the future provision of services pursuant to contractual relationships in the ordinary course of business). As the sale of an intangible, R.C. 5751.033(I), which applies to "*all other gross receipts not otherwise sitused under this section,*" provides that receipts from such sales are sitused to where the purchaser, ADT in this case, receives the benefit thereof. "*The physical location where the purchaser ultimately uses or receives the benefit of what was purchased is paramount in determining the proportion of the benefit received in Ohio.*" R.C. 5751.033(I).

Defender Direct sends the customer accounts (service agreement and customer information) to ADT's employees in Aurora, Colorado. ADT monitors the customer accounts from * * * monitoring centers located outside Ohio * * *. Defender Direct does not communicate with, or provide customer information to, any ADT locations or employees in Ohio.

The requested refund does not represent a tax loophole as revenue collected under the subscriber agreements by ADT continues to be subject to the CAT (as this is the same revenue Defender Direct would have collected had it provided the security monitoring services to Ohio subscribers). However, Defender Direct does not receive revenue from performing services under the subscriber agreements. Rather, Defender Direct receives Customer Account Revenue from ADT (the purchaser) from the sale of customer accounts, which must be sourced to where ADT receives the benefit of such purchases. [Fn.3 omitted.] ADT receives the benefit of the customer accounts at its locations where such accounts are serviced and monitored. Since none of those locations are in Ohio, all Customer Account Revenue received by Defender Direct must be sitused outside Ohio for CAT purposes. This makes sense because, if Defender Directed [sic] acted as a true sales representative, whereby subscribers were ADT customers from

inception (rather than after the security system was installed) and Defender Direct was paid a commission (corresponding to the Customer Account Revenue), the commission would be sourced outside Ohio to where ADT received the benefit of Defender Direct's sales representative services pursuant to O.A.C. § 5703-29-17(C)(4) (allocation of revenue from agency services to location of purchaser).

For these reasons, Defender Direct respectfully requests a refund of $88,588.68 representing the CAT erroneously paid for the periods 1/1/2010 – 12/31/2013 on the Customer Account Revenue received from the sale of customer accounts to ADT.

(Emphasis sic.) (Record of the Proceedings at 112-13.) Footnote 1 in the narrative states: "Alternatively, if the customer contract is considered tangible property (i.e., the physical service agreement and customer information), such property is delivered to ADT in Colorado, with Defender Direct's receipts from the sale thereof properly sitused to Colorado." *Id.* at 113.

{¶ 9} By letters dated June 30, 2014, ODT denied Defender's various tax years requests pursuant to R.C. 5751.08.

{¶ 10} Defender requested a personal appearance hearing on the denials, which was held on October 1, 2015. Defender filed a memorandum in support of its refund claim on November 3, 2015.

{¶ 11} By email dated November 25, 2015, Defender withdrew its refund claim for tax year 2010, for a revised refund request of $73,334.82.

{¶ 12} On May 25, 2016, the commissioner issued a final determination denying Defender's refund request, finding that the gross receipts at issue were properly sitused to Ohio under R.C. 5751.033(I). The commissioner stated in his decision:

Specifically, [Defender] claims that its Alarm Services Contract-fees from Alarm Services Contracts originated in Ohio should be sitused outside Ohio, because ADT received the benefit of those service agreements outside Ohio. [ODT] and [Defender] agree that the fees paid by ADT must be sitused pursuant to R.C. 5751.033(I), which states:

Gross receipts from the sale of all other services, and all other gross receipts not otherwise sitused under this section, shall be sitused to this state in the proportion that the purchaser's benefit in this state with respect to what was purchased bears

to the purchaser's benefit everywhere with respect to what was purchased. The physical location where the purchaser ultimately uses or receives the benefit of what was purchased shall be paramount in determining the proportion of the benefit in this state to the benefit everywhere. If a taxpayer's records do not allow the taxpayer to determine that location, the taxpayer may use an alternative method to situs gross receipts under this division if the alternative method is reasonable, is consistently and uniformly applied, and is supported by the taxpayer's records as the records exist when the service is provided or within a reasonable period of time thereafter.

[Defender] argues that, because it delivers the customer accounts (the Alarm Services Contracts and customer information) to ADT's employees outside Ohio, and because ADT monitors the customer accounts from locations outside Ohio, ADT receives the benefit of the Ohio-based customer accounts outside Ohio. Accordingly, [Defender] claims that the Alarm Services Contract-fees that ADT pays to [Defender] must be sitused outside Ohio. The Tax Commissioner disagrees.

ADT realizes the benefit of the Ohio-based Alarm Services Contracts in Ohio. As [Defender] puts it, [Defender] obtains the "customer relationship" for ADT. Likewise, ADT purchases "the customer relationship" from [Defender]. The customer is an Ohioan. The customer relationship is established and maintained in Ohio. The monitoring services underlying Alarm Services Contract represents security provided to Ohioans; protection of persons and property located in Ohio. The marketplace to which ADT avails itself benefits from, and is protected by, Ohio's government and public service agencies. ADT's dependence on Ohio protection and services resounds in the Alarm Services Contract itself, which states that in specified circumstances, ADT will notify the appropriate police or fire department. Without Ohio, the Alarm Services Contract-fees at issue would be wholly impossible. Accordingly, ADT's benefit with respect to these Alarm Services Contract-fees must occur entirely within Ohio.

(Record of the Proceedings at 2.)

{¶ 13} The commissioner next addressed Defender's alternative argument that it was ADT's agent, and the Alarm Services Contract-fees represented sales commissions. Defender asserted that this scenario allowed it to elect the "situs [its fees from ADT] to

ADT's principal place of business," pursuant to Ohio Adm.Code 5703-29-17(C)(4)(c). (Record of Proceedings at 2.) The commissioner determined that Defender was not an agent for ADT based on statutory definitions, provisions of the Ohio Administrative Code, and the plain language of the "Authorized Dealer Agreement" between ADT and Defender, which explicitly stated that no agency relationship existed between Defender and ADT. *Id.* at 4. The commissioner stated, "[s]imply put, every piece of evidence in the Tax Commissioner's possession suggests that [Defender] was an independent contractor with respect to ADT. Accordingly, the Tax Commissioner finds that [Defender] was not ADT's agent. Thus, [Defender] cannot make any election under O.A.C. 5703-29-17(C)(4)(c)." *Id.* at 5.

{¶ 14} The commissioner found, moreover, that even if Defender were ADT's agent, the provisions of R.C. 5751.033(I) barred Defender's election under Ohio Adm.Code 5703-29-17(C)(4)(c). The commissioner stated:

> The first sentence of R.C. 5751.033(I) sets forth the rule by which gross receipts from the sale of services must be sitused. The rule requires a formulation of a fraction with respect to the benefit of the service provided. The numerator of the fraction is the service provider's customer's benefit in Ohio, while the denominator is the service provider's customer's benefit everywhere. Thus, if half of the overall benefit to the service provider's customer occurred in Ohio, fifty percent of the service provider's gross receipts arising out of the provision of that service would be sitused to Ohio.
>
> The second sentence of R.C. 5751.033(I) requires that the physical location where the service provider's customer ultimately uses or receives the benefit must be the primary factor in formulating the fraction. The third sentence of R.C. 5751.033(I) becomes necessary only in cases where the service provider's records do not allow the service provider to determine the physical location where its customer ultimately receives the benefit of the service. In such cases, the service provider may use an alternative method to situs its gross receipts. However, the alternative method must be applied in a reasonable, consistent, and uniform manner.
>
> The election under O.A.C. 5703-29-17(C)(4)(c) is an alternative method, which must be applied in a reasonable, consistent, and uniform manner. However, [Defender] (the service provided) knows the physical location where its customer ultimately uses or receives the benefit of [Defender's] service. [Defender] is

responsible for generating those records. Each Alarm Services Contract that [Defender] negotiates with an Ohio-based consumer is a record with respect to where ADT uses or receives the benefit of [Defender's] service. Accordingly, the situsing analysis stops at R.C. 5751.033(I). [Defender] is neither required nor permitted to analyze its facts and circumstances under R.C. 5751.033(I)'s last sentence or avail itself to O.A.C. 5703-29-17(C)(4)(c), because there is no question regarding the physical location at which ADT ultimately uses or receives the benefit of [Defender's] service.

Accordingly, the refund claim is denied.

(Record of Proceedings at p. 5-6.)

{¶ 15} On June 2, 2016, Defender appealed the commissioner's final determination to the BTA. At the BTA hearing on Defender's appeal, Defender argued that the gross receipts at issue should be sitused outside Ohio because ADT received the benefit of the contracts outside Ohio. Defender also argued that the commissioner's final determination violated the Commerce and Due Process Clauses of the U.S. Constitution. At the BTA hearing, Defender presented the testimony of its controller and director of accounting, and several exhibits. Both Defender and the commissioner filed post-hearing briefs in support of their positions.

{¶ 16} On March 6, 2018, the BTA entered its unanimous decision affirming the commissioner's final determination. The BTA stated that its decision was based "upon the notice of appeal, the statutory transcript ("S.T.") certified by the commissioner, the record of the hearing ("H.R.") before this board, and the parties' written arguments." (Mar. 6, 2018 BTA Decision and Order at 1.) The BTA in its decision set forth the standard of review applied to Defender's administrative appeal:

In our review, we are mindful that, although this board reviews the findings of the Tax Commissioner de novo, the findings are presumptively valid, subject to rebuttal. *Accel, Inc. v. Testa*, Slip Opinion No. 2017-Ohio-8798, ¶ 13-14; *Alcan Aluminum Corp. v. Limbach*, 42 Ohio St.3d 121 (1989). It is incumbent upon a taxpayer challenging a decision of the Tax Commissioner to rebut the presumption and establish a clear right to the relief requested. *Kern v. Tracy*, 72 Ohio St.3d 347 (1995); *Ball Corp. v. Limbach*, 62 Ohio St.3d 474 (1992); *Belgrade Gardens v. Kosydar*, 38 Ohio St.2d 135 (1974).

*Id.* at 2.

{¶ 17} Based on its examination of the relevant statutory provisions, the BTA focused its inquiry on the purchaser's benefit in Ohio. *Id.* The BTA reviewed Ohio Adm.Code 5703-29-17, which provides for situsing of gross receipts, and concluded that, "[a]lthough a significant number of examples are provided within such rule, none specifically address the situation here, where the taxpayer generates gross receipts from the sale of alarm services contracts." (BTA Decision and Order at 3.) At Defender's urging, the BTA next reviewed Ohio Adm.Code 5703-29-17(C)(4), which addresses the situsing of "agency services" not otherwise specified in the rule. *Id.* Ohio Adm.Code 5703-29-17(C)(4)(c) provides:

> At the election of the service provider, and as long as it is applied in a reasonable, consistent, and uniform manner, agency services may be sitused according purchaser's "principal place of business" * * *. The term "principal place of business" refers to the location where the business unit being provided the service primarily maintains its operations.

{¶ 18} The BTA discussed the parties' arguments about the applicability of Ohio Adm.Code 5703-29-17(C)(4)(c) to this matter and concluded that the commissioner had appropriately determined that the gross receipts at issue were properly sitused to Ohio.

{¶ 19} The BTA declined, however, to address the commissioner's arguments about the sufficiency of the documentation underlying Defender's refund claim. The BTA also declined to make findings regarding Defender's arguments that the commissioner's final determination violated the Commerce Clause and Due Process Clause of the U.S. Constitution, stating that it had no jurisdiction to decide constitutional questions. *Cleveland Gear Co. v. Limbach*, 35 Ohio St.3d 229 (1988); *MCI Telecommunications Corp. v. Limbach*, 68 Ohio St.3d 195, 198 (1994).

{¶ 20} Defender now appeals the decision of the BTA affirming the commissioner's final determination denying the CAT refund.

## II. ASSIGNMENTS OF ERROR

{¶ 21} Defender presents two assignments of error for our review:

> [1.] Gross receipts from the sale of intangible assets are sourced to the purchaser's physical location that receives and utilizes the assets, not the location where assets were originated. Therefore, Defender Direct's receipts from the sale of Alarm Services Contracts to ADT are sitused to ADT's locations that

received and used the customer accounts, none of which are in Ohio.

[2.] The Tax Commissioner's inconsistent application of the sourcing statute – applying both destination-based and origin-based principals, and using conflicting interpretations of "purchase," – creates significant risk of double taxation and results in values destined outside Ohio being subject to tax. Therefore, as applied to Defender Direct's Contract Sale Proceeds (as defined herein), the [CAT] violates the fair apportionment requirement of the Due Process and Commerce Clauses of the United States Constitution.

## III. LAW AND DISCUSSION

### A. Standard of Review

{¶ 22} We are presented with an application of the law to largely undisputed facts. The Supreme Court of Ohio, in a recent decision involving the appeal of a BTA decision that also involved an application of law to largely undisputed facts, stated:

We must determine whether the BTA's decision is "reasonable and lawful." R.C. 5717.04. In doing so, we must defer to the BTA's factual findings, so long as they are supported by " 'reliable and probative' " evidence in the record. *Satullo v. Wilkins*, 111 Ohio St. 3d 399, 2006-Ohio-5856, 856 N.E.2d 954, ¶ 14, quoting *Am. Nat'l Can Co. v. Tracy*, 72 Ohio St. 3d 150, 152, 648 N.E.2d 483 (1995). But we must review legal issues de novo. *Crown Commun. Inc. v. Testa*, 136 Ohio St. 3d 209, 2013-Ohio-3126, 992 N.E.2d 1135, ¶ 16. Because the issue presented involves an application of the law to largely undisputed facts, we review the issue de novo. *City of Cincinnati v. Testa*, 143 Ohio St. 3d 371, 2015-Ohio-1775, 38 N.E.3d 847, ¶ 15.

*Lafarge N. Am., Inc. v. Testa*, 153 Ohio St.3d 245, 2018-Ohio-2047, ¶ 13. Accordingly, we review the legal issues presented in this matter de novo.

### B. Assignments of Error

#### 1. First Assignment of Error

{¶ 23} Defender argues that, because it delivers the customer accounts (the Alarm Services Contracts and customer information) to ADT's employees outside Ohio, and because ADT monitors the customer accounts from locations outside Ohio, ADT receives the benefits of the Ohio-based customer accounts outside Ohio. Defender asserts,

therefore, that the Alarm Services Contract-fees ADT pays to Defender must be considered to be sitused outside Ohio.

{¶ 24} Ohio levies a CAT "on each person with taxable gross receipts for the privilege of doing business in this state."  R.C. 5751.02(A).  The statute further provides:

> For the purposes of this chapter, "doing business" means engaging in any activity, whether legal or illegal, that is conducted for, or results in, gain, profit, or income, at any time during a calendar year. Persons on which the commercial activity tax is levied include, but are not limited to, persons with substantial nexus with this state. The tax imposed under this section is not a transactional tax and is not subject to Public Law No. 86-272, 73 Stat. 555. The tax imposed under this section is in addition to any other taxes or fees imposed under the Revised Code. The tax levied under this section is imposed on the person receiving the gross receipts and is not a tax imposed directly on a purchaser. The tax imposed by this section is an annual privilege tax for the calendar year that, in the case of calendar year taxpayers, is the annual tax period and, in the case of calendar quarter taxpayers, contains all quarterly tax periods in the calendar year. A taxpayer is subject to the annual privilege tax for doing business during any portion of such calendar year.

*Id.*

{¶ 25} The provisions for determining how gross receipts must be sitused to Ohio are set forth in R.C 5751.033.  The situsing of taxable gross receipts that are not otherwise provided for in R.C. 5751.033 is governed by R.C. 5751.033(I), which provides:

> Gross receipts from the sale of all other services, and all other gross receipts not otherwise sitused under this section, shall be sitused to this state in the proportion that the purchaser's benefit in this state with respect to what was purchased bears to the purchaser's benefit everywhere with respect to what was purchased. The physical location where the purchaser ultimately uses or receives the benefit of what was purchased shall be paramount in determining the proportion of the benefit in this state to the benefit everywhere. If a taxpayer's records do not allow the taxpayer to determine that location, the taxpayer may use an alternative method to situs gross receipts under this division if the alternative method is reasonable, is consistently and uniformly applied, and is supported by the taxpayer's records as the records exist when the service is provided or within a reasonable period of time thereafter.

Based on the provisions of R.C. 5751.033(I), our inquiry focuses on where ADT, the purchaser, ultimately receives the benefit of the contracts it has purchased from Defender.

{¶ 26} Defender concedes that "[g]ross receipts from the sale of intangible assets, such as customer contracts, are subject to Ohio [CAT] when the purchaser of the contracts receives the benefit thereof in Ohio." (Defender's Brief at 1.) Defender asserts, however, that although it originates contracts in Ohio and sells them to ADT, ADT "receives the contracts in Colorado and uses the contracts outside Ohio to provide security services from its non-Ohio monitoring centers." *Id.* at 1-2. Defender argues, therefore, that ADT, as the purchaser, ultimately receives the benefit of the contracts wholly outside Ohio. The commissioner disputes Defender's interpretation of the law, arguing that, as enunciated in his final determination, ADT receives the benefit of the contract wholly in Ohio, where the security monitoring services are provided to protect individuals and property in Ohio.

{¶ 27} Ohio Adm.Code 5703-29-17 governs the situsing of gross receipts from services. The rule provides a number of examples, but none specifically address the situation here, where the taxpayer (Defender) generates gross receipts from the sale of alarm services contracts. Defender asserts that Ohio Adm.Code 5703-29-17(C)(4) applies here. This rule addresses the situsing of agency services not otherwise specified in the rule and provides in relevant part:

> (b) If agency services are performed for a purchaser with operations within and without Ohio, the gross receipts are sitused in Ohio if the services performed are of benefit to specific operations in Ohio.
>
> * * *
>
> (c) At the election of the service provider, and as long as it is applied in a reasonable, consistent, and uniform manner, agency services may be sitused according to the purchaser's "principal place of business" * * *. The term "principal place of business" refers to the location where the business unit being provided the service primarily maintains its operations. In determining the "principal place of business" of a purchaser, the following measures, if known, shall be considered in sequential order:
>
> (i) The branch, division, or other unit where the purchaser (customer) primarily receives the benefit of the agency service;

For example, the New York division of a large, multi-national corporation with operations in Ohio pays an Ohio agent fees associated with the division's life insurance policy. Receipts from this service are sitused to New York, because the agency services were primarily received by the New York division.

(ii)  The primary location of the management operations of the purchaser's business unit; and

For example, an advertising agency works with a multi-state manufacturer to develop an advertising campaign for its customers. The company has locations in several states, but the management of the company is located in Ohio. The gross receipts would be sitused to Ohio since the first default, i.e., the location where the purchaser primarily receives the services would not be applicable, and the business unit's management operations are in Ohio.

(iii)  The purchaser's (customer's) billing address is acceptable if provided in good faith. The billing address must be the site where the purchaser has some actual operations, and not just a post office box.

For example, an advertising agency provides magazine advertising services for one product line of a large, multi-state manufacturer. The product line being sold is located in several states, and the management of the product line is located in most of the locations. The billing address may be used to situs the gross receipts as long as the address is associated with an operation of the manufacturer.

*Id.*

{¶ 28} The record reflects that the commissioner and the BTA considered, and dismissed, Defender's argument about the applicability of these statutory provisions.  The BTA, in its decision affirming the commissioner's final determination, stated:

There is no dispute in this matter that ADT does not maintain any locations within Ohio; * * *. Therefore, if Defender's receipts are sitused under Ohio Adm. Code 5703-29-17(C)(4), they would be sitused outside Ohio. In addition, Defender cites examples of other services illustrated in the rule * * *. Defender draws a distinction between the service it provides to ADT, i.e., obtaining the customer relationship for ADT, and the service ADT provides to Ohio customers pursuant to such contracts, i.e., security monitoring services.

The commissioner disagrees as to the applicability of Defender's examples, arguing, as he did in his final determination, that the benefit to ADT is received *because of* property in Ohio which ADT will monitor pursuant to the alarm services contracts Defender sells to it. * * *

Upon review of the record, the arguments, and the statutory and administrative code provisions, we agree with the Tax Commissioner that Defender's receipts from the sale of alarm services contracts to ADT, i.e. its "customer account revenue" is properly sitused to Ohio. *It belies logic to argue that the purchaser (ADT) receives no benefit in Ohio from the contracts it purchases from Defender. The contracts would not exist without property in Ohio to be monitored and equipment located within such property in Ohio by which the monitoring is performed.* The commissioner has already determined that Defender is not an agent of ADT, and that issue has not been raised as an error on appeal. Defender therefore may not avail itself of the situsing rules in Ohio Adm. Code 5703-29-17(C)(4). Certainly if it were an agent and the contracts underlying the gross receipts in this matter were unrelated to property located [in] Ohio, for example, life insurance, see Ohio Adm. Code 5703-29-17(C)(4)(c)(i), the receipts might be properly sitused outside Ohio. However, because of the nature of the contracts obtained by Defender and sold to ADT, we find the gross receipts from such sales are properly sitused to Ohio.

(Emphasis sic and added.) (BTA Decision and Order at 3.)

{¶ 29} " 'Due deference should be given to statutory interpretations by an agency that has accumulated substantial expertise and to which the General Assembly has delegated enforcement responsibility.' " *Constellation New Energy, Inc. v. Pub. Utils. Comm.*, 104 Ohio St.3d 530, 2004-Ohio-6767, ¶ 51, quoting *Weiss v. Pub. Utils. Comm.*, 90 Ohio St.3d 15, 17-18 (2000). "It is a fundamental tenet of administrative law that an agency's interpretation of a statute that it has the duty to enforce will not be overturned unless the interpretation is unreasonable." *State ex rel. Clark v. Great Lakes Constr. Co.*, 99 Ohio St.3d 320, 2003-Oho-3802, ¶ 10; *accord, Northwestern Ohio Bldg. & Constr. Trades Council v. Conrad*, 92 Ohio St.3d 282, 287-88 (2001). In *Northwestern Ohio Bldg. & Constr. Trades Council*, the Supreme Court stated further:

It is axiomatic that if a statute provides the authority for an administrative agency to perform a specified act, but does not provide the details by which the act should be performed, the

> agency is to perform the act in a reasonable manner based upon a reasonable construction of the statutory scheme. *See Swallow v. Indus. Comm.* (1988), 36 Ohio St. 3d 55, 57, 521 N.E.2d 778, 779. A court must give due deference to the agency's reasonable interpretation of the legislative scheme. *Id. See, also, Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.* (1984), 467 U.S. 837, 843, 104 S. Ct. 2778, 2782, 81 L. Ed. 2d 694, 703 ("if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute").

*Id.* at 287-88.

{¶ 30} Based on our de novo review of the record, we find the commissioner's final determination to be reasonable and well-reasoned. We adopt his findings that Defender was not an agent of ADT, that the provisions of Ohio Adm.Code 5703-29-17(C)(4)(c) are inapplicable to this matter, and that ADT's benefit with respect to the Alarm Services Contract-fees occurred entirely in Ohio. We find, as a matter of law, that Defender's gross receipts from selling the Ohio-based contracts to ADT are sitused in Ohio and, therefore, subject to Ohio's CAT.

{¶ 31} Based on the foregoing, we find no error in the BTA affirming the commissioner's final determination that denied Defender's refund claim.

{¶ 32} Defender's first assignment of error is overruled.

## 2. Second Assignment of Error

{¶ 33} Defender argues that the commissioner's situsing of Defender's gross receipts in Ohio creates the substantial likelihood of double taxation on Defender in violation of the Commerce Clause doctrine and the Due Process Clause of the U.S. Constitution. The commissioner responds that his application of the general assembly's CAT-situsing statute to a CAT taxpayer's (Defender's) gross receipts under the facts presented in this case does not violate constitutional provisions.

{¶ 34} Defender argues that the constitutional violation in this matter arises from the commissioner's inconsistent application of the situsing rules under R.C. 5751.033. Defender asserts that the statute "does not consider origination in apportioning value to Ohio for CAT purposes. Instead, the only relevant factors for CAT purposes are the destination of the sale – in this case, the destination of the Alarm Services Contracts sold to ADT." (Defender's Brief at 38.) Defender asserts that the commissioner applies the statute

inconsistently, applying destination-based sourcing in some circumstances, but applying origin-based sourcing on Defender. Defender argues that the commissioner's disregard of the statutory "physical location" requirement in R.C. 5751.033(I) violates the fair apportionment prong of the Commerce Clause.

{¶ 35} Defender also argues that the commissioner inconsistently interpreted the term purchaser as used in R.C. 5751.033 to be the immediate/direct purchase, not the ultimate purchaser or consumer. Defender argues:

> The Tax Commissioner wants the best of both worlds – applying destination-based sourcing in most circumstances but origin-based sourcing when it increases tax revenue, narrowly interpreting "purchaser" for some sales, while expanding the meaning to include "ultimate purchaser" when the consumer is located in Ohio. This inconsistent application of the situsing statute results in an unfairly expansive determination of value subject to CAT by taxing receipts both originating in and destined for Ohio. As a result, a substantial likelihood of double taxation has been created. The United States Constitution's requirement of fair apportionment protects taxpayers from the unfair application of state taxes, like is present in this case, that results in double taxation or taxing value earned outside the state.

(Defender's Brief at 38-40.)

{¶ 36} The commissioner argues that, when, as here, a taxpayer challenges the constitutionality of an Ohio tax provision, the taxpayer bears a particularly heavy burden. Statutory classifications are generally valid if they bear a rational relation to a legitimate government purpose. *Regan v. Taxation Without Representation of Washington*, 461 U.S. 540, 547 (1983). Legislatures have especially broad latitude in creating classifications and distinctions in tax statutes. *Id.*

{¶ 37} The Supreme Court of Ohio, like the United State Supreme Court, has been deferential to the general assembly when reviewing the constitutionality of taxation statutes. A court's power to invalidate a statute "is a power to be exercised only with great caution and in the clearest of cases." *Columbia Gas Transm. Corp. v. Levin*, 117 Ohio St.3d 122, 2008-Ohio-511, ¶ 41. Laws are entitled to a " 'strong presumption of constitutionality,' " and the party challenging the constitutionality of a law " 'bears the burden of proving that the law is unconstitutional beyond a reasonable doubt.' " *Id.,* quoting *Yajnik v. Akron Dept. of Health, Housing Div.,* 101 Ohio St.3d 106, 2004-Ohio-

357, ¶ 16; *Buckley v. Wilkins,* 105 Ohio St.3d 350, 2005-Ohio-2166, ¶ 18*; Ohio Grocer's Assn. v. Levin*, 123 Ohio St.3d 303, 2009-Ohio-4872, ¶ 11. Given this heavy burden, a challenged statute will be upheld if a plausible constitutional interpretation is available. *Ohio Grocers Assn.* at ¶ 11.

{¶ 38} Taxes are fundamentally a legislative responsibility, and a taxpayer challenging the constitutionality of a taxation statute bears the burden to negate every conceivable basis that might support the legislation. *Columbia Gas* at ¶ 91*,* citing *Lyons v. Limbach*, 40 Ohio St.3d 92, 94 (1988); *GTE N., Inc. v. Zaino*, 96 Ohio St.3d 9, 2002-Ohio-2984, ¶ 21.

{¶ 39} " 'This already deferential standard "is especially deferential" in the context of classifications arising out of complex taxation law.' " *Columbia Gas* at ¶ 92, quoting *Park Corp. v. Brook Park*, 102 Ohio St.3d 166, 2004-Ohio-2237, ¶ 23, quoting *Nordlinger v. Hahn*, 505 U.S. 1, 11 (1992). Under the rational-basis standard, a state has no obligation to produce evidence to sustain the rationality of a statutory classification. *Columbia Gas* at ¶ 91, citing *Am. Assn. of Univ. Professors, Cent. State Univ. Chapter v. Cent. State Univ.*, 87 Ohio St.3d 55, 58, 60 (1999).

{¶ 40} Under the fair apportionment prong of the Commerce Clause and the Due Process Clause of the U.S. Constitution, a state tax must meet an internal consistency test and an external consistency test. *Moorman Mfg. Co. v. Blair*, 437 U.S. 267 (1978); *Goldberg v. Sweet*, 488 U.S. 252 (1989). The *Goldberg* Court stated:

> [T]he central purpose behind the apportionment requirement is to ensure that each State taxes only its fair share of an interstate transaction. *See, e. g., Container Corp. of America v. Franchise Tax Bd.*, 463 U.S. 159, 169 (1983). But "we have long held that the Constitution imposes no single [apportionment] formula on the States," *id.*, at 164, and therefore have declined to undertake the essentially legislative task of establishing a "single constitutionally mandated method of taxation." *Id.*, at 171; *see also Moorman Mfg. Co. v. Bair*, 437 U.S. 267, 278-280 (1978). Instead, we determine whether a tax is fairly apportioned by examining whether it is internally and externally consistent. [*American Trucking Assns., Inc. v.*] *Scheiner,* [488 U.S. 266,] 285; *Armco Inc. v. Hardesty*, 467 U.S. 638, 644 (1984); *Container Corp., supra*, at 169-170.

*Id.* at 260-61.

{¶ 41} The *Goldberg* Court provided the following example of internal consistency:

> To be internally consistent, a tax must be structured so that if every State were to impose an identical tax, no multiple taxation would result. [*Container Corp. of America v. Franchise Tax Bd.*,] 463 U.S. at 169. Thus, the internal consistency test focuses on the text of the challenged statute and hypothesizes a situation where other States have passed an identical statute.

*Id.* at 261. In applying this maxim, the high court went on to apply it in the context of taxing long distance telephone calling, stating:

> We conclude that the Tax Act is internally consistent, for if every State taxed only those interstate phone calls which are charged to an in-state service address, only one State would tax each interstate telephone call.

*Id.*

{¶ 42} The commissioner's situsing of the gross receipts at issue here meets the requirement of being internally consistent. This is because, if every other state sitused only those receipts from alarm services contracts in which the property subject to the monitoring services is located in that state, as the commissioner has done here, only one state would tax the receipts from each such contract. The commissioner sets forth in his brief the connections that the gross receipts at issue have to Ohio:

> 1. The receipts at issue are generated exclusively from Defender's sales of alarm system contracts to its purchaser (ADT) that Defender obtains wholly from *Ohio*-located residents and businesses, in order to protect *Ohio* homes and business establishments;
>
> 2. In earning those gross receipts, Defender maintains Ohio offices and utilizes its own *Ohio*-based installers and customer service personnel to install the alarm systems and to obtain the alarm system contracts;
>
> 3. ADT, as purchaser of the alarm system contracts obtained by Defender, receives benefits from the Ohio activities conducted by Defender's Ohio personnel in procuring the contracts and installing the alarm-system equipment necessary to perform the contracts;
>
> 4. Defender, by procuring the contracts, and ADT, by purchasing the contracts from Defender, thereby obtain

"customer relationships" that are established by Defender in Ohio and maintained by ADT in Ohio throughout the duration of the contracts;

5. Regarding the receipts at issue, both ADT and Defender purposefully avail themselves of the Ohio marketplace; and

6. On an on-going basis, throughout the full duration of the contracts, ADT and Defender enjoy the benefits of Ohio police and fire protection.

(Commissioner's Brief at 21-22.)

{¶ 43} In its appeal brief, Defender has applied an entirely different and erroneous constituency test of what appears to be its own making. Defender asserts that Ohio's situsing provisions, as interpreted and applied by the commissioner, are fatally inconsistent when one compares the commissioner's situsing of the receipts that Defender generates from its sales to ADT of Alarm Services Contracts with the commissioner's allegedly inconsistent treatment of allegedly similar kinds of receipts. *See* Defender's Brief at 38-39.

{¶ 44} New arguments under state or federal constitutional provisions are always welcome as human interest and activities change over time, and the rule of law's openness to inventive ways to apply these human rights maxims are to be commended. However, such arguments must "fit" within the protective, constitutional shield. Defender's does not. Defender's argument is vague, based on an unspecified comparison of species framed as an "Equal Protection Clause" challenge, as opposed to a fair apportionment challenge under the dormant Commerce Clause doctrine/Due Process Clause. Such a vague challenge necessarily fails on jurisdictional grounds, since it was not specified in Defender's appeals to the BTA and this Court or in its briefing before this Court. *See Castle Aviation, Inc. v. Wilkins*, 109 Ohio St.3d 290, 2006-Ohio-2420, ¶ 19-34.

{¶ 45} In fact, in its appeal brief, Defender only mentions the Equal Protection Clause in its bare assertion that "the Tax Commissioner's Final Determination which violated Defender's rights under the Commerce, Equal Protection, and Due Process Clauses of the United States Constitution by subjecting gross receipts to tax that lack the necessary minimum connection and substantial nexus to Ohio." (Apr. 4, 2018 Notice of Appeal at 6.) We also note that Defender's appeal to the BTA makes no mention of the Equal Protection Clause.

{¶ 46}  In its brief, Defender itself has recognized the proper standard under the fair apportionment external consistency test.  Under that test, to meet its burden of proof showing that a state's tax apportionment methodology is constitutionally invalid, the taxpayer must prove " 'by clear and cogent evidence that the income attributed to Ohio is in fact out of all proportion to the business transacted in Ohio or leads to a grossly distorted result.' "  *See* Defender's Brief at 37-38, quoting *Cooper Tire and Rubber Co. v. Limbach*, 70 Ohio St.3d 347, 350 (1994), citing *Trinova Corp. v. Michigan Dept. of Treasury*, 498 U.S. 358, 380 (1991).

{¶ 47}  Having correctly described but not having actually named this external consistency test, Defender thereafter argues that, in applying that test, "the only relevant factors [sic] for CAT purposes are [sic] the destination of the sale – in this case, the destination of the Alarm Services Contract sold to ADT."  (Defender's Brief at 38.)  It is not clear, but this language could signal that Defender suggests that its own Ohio business activities may not be considered in determining whether the gross receipts that the commissioner has sitused to Ohio are "out of all proportion to" Defender's own "business transacted in Ohio."

{¶ 48}  The CAT is levied on Defender's privilege of doing business in this state, not on the extent of Defender's purchaser's (ADT's) business presence or activities in Ohio. With due respect, Defender appears to have inexplicably substituted or conflated aspects of statutory inquiry about the proper Ohio-situsing criteria with the separate and fundamentally different constitutional inquiry about the criteria applicable to a fair apportionment challenge, as developed under the dormant Commerce Clause doctrine and the Due Process Clause.

{¶ 49}  When the external consistency test that applies to fair apportionment challenges is properly applied to Defender's business activities in Ohio, the constitutional sufficiency of the connections between the gross receipts at issue here and Defender's Ohio business are not reasonably challenged.  As measured by the multiple and extensive connections that these gross receipts have with the State of Ohio, no other state could plausibly assert a greater connection to these receipts than Ohio.

{¶ 50}  In the final analysis, Defender falls short of meeting the stringent requirements for successfully invalidating a state tax statute on the basis of a fair

apportionment challenge to its constitutionality. Defender fails to set forth a colorable fair apportionment challenge to R.C. 5751.033(I), because Defender does not fairly state the necessary legal standards nor apply them correctly to the pertinent evidentiary material.

{¶ 51} Based on the foregoing, we find that the commissioner's application of the Ohio's CAT-situsing statute to Defender's gross receipts under the facts presented here does not violate constitutional provisions.

{¶ 52} Accordingly, Defender's second assignment of error is overruled.

## IV. CONCLUSION

{¶ 53} Based on the foregoing, we overrule both of Defender's assignments of error and affirm the judgment of the Ohio Board of Tax Appeals.

*Judgment affirmed.*

KLATT, P.J., and HORTON, J., concur.

———————————