**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as**
*Defender Sec. Co. v. McClain*, **Slip Opinion No. 2020-Ohio-4594.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-4594

DEFENDER SECURITY COMPANY, APPELLANT, *v.* MCCLAIN, TAX COMMR., APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Defender Sec. Co. v. McClain*, Slip Opinion No. 2020-Ohio-4594.]**

*Taxation—Commercial-activity tax—Gross receipts—R.C. 5751.033(I)—Situs is established where intangible contract rights are used or their benefit is received—Court of appeals' judgment reversed and cause remanded to the tax commissioner for issuance of refunds.*

(No. 2019-0531—Submitted April 28, 2020—Decided September 29, 2020.)

APPEAL from the Court of Appeals for Franklin County, No. 18AP-238, 2019-Ohio-725.

_____

**O'CONNOR, C.J.**

{¶ 1} Appellant, Defender Security Co., claims entitlement to a $73,334.82 refund of the commercial activity tax ("CAT") that it paid on gross receipts earned

between January 2011 and December 2013. The CAT is imposed on gross receipts derived from income-producing activity in Ohio, and the receipts at issue in this case consisted of payments made by ADT Security Services, Inc. to Defender. Appellee, tax commissioner, and later the Board of Tax Appeals ("BTA") and the Franklin County Court of Appeals all concluded that the receipts were Ohio-taxable receipts under the CAT law. We reverse and remand to the tax commissioner to issue refunds.

## I. RELEVANT BACKGROUND

{¶ 2} ADT provides security services to residential and commercial property owners throughout the country. ADT enters into alarm-services contracts with its customers and provides remote monitoring services by receiving information from security equipment installed at customers' properties. When an alarm is triggered, ADT contacts the customer and the police or fire authorities.

{¶ 3} Defender is an Indianapolis-based company whose business consists of serving as an "authorized dealer" of ADT under an Authorized Dealer Agreement (the "master agreement"). Pursuant to the master agreement, Defender acts "exclusively" in its relationship to ADT, but it is *not* an agent of ADT. Defender (1) generates leads for new ADT customers through advertising, (2) installs equipment at the Ohio property of new customers, for which it collects and retains a fee, and (3) at time of installation, signs an alarm-services contract with Ohio customers under which ADT provides security-monitoring services to the Ohio customer.

{¶ 4} Within Ohio, Defender operates four branch locations: Cincinnati, Columbus, Toledo, and Akron. But executive and administrative staff work is performed in Indiana at Defender's Indianapolis headquarters. ADT interacts with both Defender and with Ohio customers from locations outside Ohio.

{¶ 5} Defender collects new Ohio alarm-services contracts at its Indianapolis headquarters and forwards them to ADT's dealer-support unit in

Aurora, Colorado. ADT decides whether to take assignment of each contract. The gross receipts at issue consist of payments ADT makes to Defender when ADT has accepted assignment of a customer contract. In 5 to 6 percent of instances, ADT rejects assignment of the contract and the customer pays Defender for security-monitoring services provided by ADT. In all instances, ADT provides security-monitoring services to Ohio customers from one of six monitoring locations, all outside Ohio.

{¶ 6} These transactions lead to three types of revenue sources for Defender: (1) payments made by Ohio customers to Defender for the cost and installation of alarm-services equipment, (2) payments made by Ohio customers to Defender under the alarm-services contracts that are not accepted by ADT, and (3) payments made by ADT to Defender under the master agreement as consideration for ADT's purchase of Ohio alarm-services contracts from Defender. There is no dispute as to the first two: Defender pays the CAT on the fees it obtains from Ohio customers for installing equipment and for alarm services when ADT does not purchase the contract. Only the third category, which we refer to as "ADT funding," is at issue.

## II. COURSE OF PROCEEDINGS

{¶ 7} Defender's refund claim seeks the return of $73,334.82 for the quarterly tax periods during calendar years 2011, 2012, and 2013. To document the amount of refund, Defender submitted two summary documents but did not submit the business records underlying those summaries. First, Defender submitted a spreadsheet showing, for each quarter, the amount of "ADT funding," the CAT rate of tax, and the resulting amount of refund claimed. Second, Defender submitted a spreadsheet showing, for each quarter, the total taxable gross receipts reported on Defender's CAT return, the CAT amount paid, the taxable gross receipts "per refund claim," and the amount of the CAT claimed as refund.

{¶ 8} The tax commissioner denied the refund claim. He noted that Defender "seeks a refund for CAT it paid with respect to the Alarm Services Contract-fees it received from ADT," but he did not question the sufficiency of the documentation of the refund amounts. The final determination also stated that Defender "obtains customer relationships for ADT" for which "ADT pays [Defender] a fee." The commissioner concluded that Defender's purchaser, ADT, "realizes the benefit of the Ohio-based Alarm Services Contracts in Ohio," reasoning that "[w]ithout Ohio, the Alarm Services Contract-fees at issue would be wholly impossible," with the result that "ADT's benefit with respect to these Alarm Services Contract-fees must occur entirely within Ohio."

{¶ 9} The final determination also rejected Defender's alternative claim that it could situs the receipts at ADT's principal place of business in Colorado under Ohio Adm.Code 5703-29-17(C)(4)(c), which authorizes an agent who is a taxpayer to elect apportionment to the "principal place of business" of its principal. The commissioner found that Defender did not qualify as an "agent" under the CAT law, and Defender did not contest that finding on appeal.

{¶ 10} On appeal, the BTA held a hearing at which Defender's corporate controller testified that she verified the claimed refund amounts by reviewing the internal business records on which the calculation of the refund amounts was based.

{¶ 11} The BTA agreed with the tax commissioner's conclusion that the proper situs of ADT funding should be Ohio inasmuch as "[i]t belies logic to argue that the purchaser (ADT) receives no benefit in Ohio from the contracts it purchases from Defender," given that both Defender's obtaining and ADT's servicing of the contracts involves property in Ohio. BTA No. 2016-1030, 2018 WL 1372720 (Mar. 6, 2018), at *3. In support, the BTA cited provisions of Ohio Adm.Code 5703-29-17(C) that involve services rendered with respect to property located in Ohio, such as appraisal services (division (5)), architecture services (division (6)), and engineering services (division (20)). BTA No. 2016-1030, 2018 WL 1372720,

4

at *3.  The BTA also stated that, in light of its ruling on the merits, it did not need to "further address the Tax Commissioner's arguments about the sufficiency of the documentation underlying Defender's refund claim."  *Id.* at *4.  The BTA affirmed the commissioner's denial of the refund claim.  *Id.*

{¶ 12} Defender appealed to the Franklin County Court of Appeals, which affirmed the BTA's decision.  2019-Ohio-725, ¶ 30. The court also held that the tax's imposition did not violate the Commerce Clause.  *Id*. at ¶ 42, 49-51.

{¶ 13} Defender appealed to this court.  We allowed jurisdiction as to three propositions of law:

1. The appellate standard of review for legal questions addressed by the Board of Tax Appeals is de novo, without deference to the Tax Commissioner's determination thereof.

2. Gross receipts from the sale of intangible assets are sourced to the purchaser's physical location(s) that receive and use the assets, not the location where the assets were originated. Therefore, Defender's receipts from the sale of Alarm Services Contracts to ADT are sitused to ADT's physical locations outside Ohio where it received the Alarm Services Contracts and utilized such Contracts by performing monitoring services for consumers.

3. The significant risk of double taxation caused by the Tax Commissioner's conflicting applications of R.C. 5751.033(I) violates the fair apportionment requirement of the dormant Commerce Clause of the United States Constitution.

## III.  SUFFICIENT EVIDENCE SUPPORTS THE REFUND CLAIM

{¶ 14} Before turning to the propositions of law, we consider the tax commissioner's argument that we should dismiss this appeal as improvidently

allowed on the grounds that "Defender never offered business records to show what it paid on account of its sales of Ohio contracts to ADT." Our review of the record persuades us that the documentation and testimony are sufficient to justify our consideration of the substantive issues.

{¶ 15} Defender presented summary documents showing its CAT payments relating to the receipts at issue and then, at the BTA hearing, presented the testimony of its corporate controller to verify the summary documents in light of underlying records. Given this, we see no reason why the absence of primary documentation should deter us from reaching the legal issues when it did not deter the commissioner himself, in his final determination, from doing so without any suggestion of a defect in the evidence. Thus, we conclude that dismissal on evidentiary grounds would be inappropriate under these circumstances.

## IV. ANALYSIS

### A. The court of appeals correctly reviewed the legal issues de novo without deference to the tax commissioner

{¶ 16} Defender's first proposition of law asserts that the appellate standard of review for legal questions addressed by the BTA is de novo, without deference to the tax commissioner's determination. Defender maintains that the court of appeals "erred by affording great deference to the Tax Commissioner's determination" regarding the proper situs under R.C. 5751.033(I). *See Progressive Plastics, Inc. v. Testa*, 133 Ohio St.3d 490, 2012-Ohio-4759, 979 N.E.2d 280, ¶ 15 ("the proper construction and application" of tax statutes "presents a question of law, and our review in that regard is not deferential but de novo"). While we do not dispute the applicability of the legal rule stated in *Progressive Plastics*, we disagree with the premise of Defender's argument on this point.

{¶ 17} The court of appeals' decision shows that the court decided the legal issue itself without deference to the tax commissioner's determination. The court of appeals stated as follows:

> Based on *our de novo review of the record*, we find the commissioner's final determination to be reasonable and well-reasoned. We adopt his findings that Defender was not an agent of ADT, that the provisions of Ohio Adm.Code 5703-29-17(C)(4)(c) are inapplicable to this matter, and that ADT's benefit with respect to the Alarm Services Contract-fees occurred entirely in Ohio. We find, *as a matter of law*, that Defender's gross receipts from selling the Ohio-based contracts to ADT are sitused in Ohio and, therefore, subject to Ohio's CAT.

(Emphasis added.) 2019-Ohio-725 at ¶ 30. Because the court of appeals, in accordance with our case law, did apply a de novo standard of review, we find Defender's argument under the first proposition of law to be without merit.

## B. Under R.C. 5751.033(I), the situs of "ADT funding" receipts is ADT's physical locations outside Ohio

{¶ 18} Defender's second proposition of law presents the substantive tax issue in this appeal. Ohio's CAT is "levied * * * on each person with taxable gross receipts for the privilege of doing business in this state." R.C. 5751.02(A). Because business is conducted across state and international boundaries, imposing the tax often raises the thorny issue of how to properly allocate receipts to Ohio for taxation. The CAT law defines "[t]axable gross receipts" as "gross receipts sitused to this state under section 5751.033 of the Revised Code." R.C. 5751.01(G).

{¶ 19} The parties agree that R.C. 5751.033(I) applies to the gross receipts at issue. The statute provides a catch-all situs for "gross receipts not otherwise sitused under this section," and it states that such receipts "shall be sitused to this state in the proportion that the purchaser's benefit in this state with respect to what was purchased bears to the purchaser's benefit everywhere with respect to what

was purchased." In determining that ratio, the statute further provides that "[t]he physical location where the purchaser ultimately uses or receives the benefit of what was purchased shall be paramount in determining the proportion of the benefit in this state to the benefit everywhere." *Id.*

{¶ 20} Reduced to its essence, Defender's second proposition of law presents the following question: Do Defender's ADT-funding receipts have their situs *within* Ohio or *outside* Ohio under R.C. 5751.033(I)? The determination of situs under the statutory standard involves an " 'inference of an ultimate fact' " from the basic facts shown by the evidence. *Marc Glassman, Inc. v. Levin*, 119 Ohio St.3d 254, 2008-Ohio-3819, 893 N.E.2d 476, ¶ 7, quoting *Ace Steel Baling, Inc. v. Porterfield*, 19 Ohio St.2d 137, 142, 249 N.E.2d 892 (1969). And the reasonableness of the inference from basic facts to an ultimate fact is a question of law on review. *SFZ Transp., Inc. v. Limbach*, 66 Ohio St.3d 602, 604-605, 613 N.E.2d 1037 (1993).

*1. R.C. 5751.033(I) establishes situs at ADT's physical locations outside Ohio*

{¶ 21} Under R.C. 5751.033(I), the "paramount" consideration when determining the proportion of the benefit attributed to Ohio is "[t]he physical location where the purchaser [ADT in this case] ultimately uses or receives the benefit of what was purchased." Defender argues that ADT purchased intangible contract rights and that ADT's physical locations outside Ohio are the places where ADT actually used and received the benefit of those contractual rights. We agree with Defender, and we conclude that the tax commissioner, the BTA, and the court of appeals all failed to properly distinguish between the benefit Ohio consumers received from ADT and the benefit ADT received by purchasing consumer contracts from Defender.

{¶ 22} What ADT's customers acquired was the benefit of ADT's security services in relation to their Ohio properties, and their payments for those services were Ohio taxable receipts under R.C. 5751.033(I). By contrast, what ADT

8

purchased from Defender consisted of intangible contract rights, and the benefit derived from the purchase lay in receiving payments from Ohio customers in consideration for ADT providing the contracted-for monitoring services from its locations outside Ohio.

{¶ 23} The contrast of physical locations is stark. On the one hand, the physical locations at which ADT's customers use and receive the benefit of ADT's monitoring services are the Ohio properties protected by ADT. On the other hand, the physical locations at which ADT uses and receives the benefit of its contracts are ADT's physical locations where it receives customer payments and performs services for Ohio customers—all of which, on this record, are outside Ohio. Because ADT uses and receives the benefit of the contracts it purchased from Defender outside Ohio, Defender's receipts from the sale of those contracts are not sitused to Ohio under R.C. 5751.033(I).

*2. Ohio Adm.Code 5703-29-17 does not apply, nor does it furnish valuable analogies, because ADT purchases contracts rather than services*

{¶ 24} R.C. 5751.033(K) specifically authorizes the tax commissioner to "adopt rules to provide additional guidance to the application of this section, and provide alternative methods of situsing gross receipts that apply to all persons, or subset of persons, that are engaged in similar business or trade activities." With respect to applying division (I) of R.C. 5751.033, the commissioner has exercised this power by promulgating Ohio Adm.Code 5703-29-17.

{¶ 25} By its terms, the administrative rule addresses services, not intangible contract rights. Division (A) states a general rule about situsing receipts from services, division (B) defines terms and states some general principles concerning the situsing of services, and division (C) gives specific examples of how to determine the situs of receipts from enumerated services. In light of this, the tax commissioner himself categorically states in his brief that "the regulation is irrelevant because it relates to services, not intangibles." This observation accords

with Defender's emphasis on the transactions as sales of intangible assets and, on the record before us, we agree.

{¶ 26} To be sure, Defender engages in the activity of signing up customers in Ohio who will mostly become customers of ADT, and that activity could be viewed as providing a service for ADT. But that approach runs aground on the simple fact that, under the master agreement, ADT does not pay Defender for signing up customers; it only pays Defender for those customer contracts that it purchases from Defender. Apart from actually selling a contract to ADT, Defender receives no "ADT funding" at all.

{¶ 27} Because the administrative rule is inapplicable, the BTA erred when it analogized the present situation to the treatment of receipts of property appraisers, architects, and engineers under Ohio Adm.Code 5703-29-17(C)(5), (6), and (20). Under the administrative rule, the rendition of such services in relation to property in Ohio makes the receipt of fees by the skilled professional an Ohio-taxable receipt. But ADT does not pay Defender for performing services in relation to Ohio property. Indeed, when Defender installs alarm systems at Ohio properties that allow ADT to provide security-monitoring services, it is the Ohio customer who pays Defender, and after receiving those payments, Defender pays the CAT on them itself.

*3. The term "benefit" in R.C. 5751.033(I) should be interpreted according to its common, ordinary meaning, not an acquired meaning*

{¶ 28} The tax commissioner argues that the term "benefit" has acquired a special meaning in United States Supreme Court cases involving due-process or commerce-clause challenges to the imposition of state excise or income taxes. According to the commissioner, "benefit" connotes "government services that make business possible and profitable, such as 'police and fire protection, the use of public roads and mass transit, and the other advantages of civilized society.' " Appellee's brief at 18, quoting *Goldberg v. Sweet*, 488 U.S. 252, 267, 109 S.Ct.

10

582, 102 L.Ed.2d 607 (1989). The commissioner reasons that the General Assembly "imported" this acquired meaning into R.C. 5751.033(I) by using the word "benefit" in the language of the statute.

{¶ 29} As support for his argument, the commissioner cites *Davis v. Michigan Dept. of Treasury*, 489 U.S. 803, 813, 109 S.Ct. 1500, 102 L.Ed.2d 891 (1989) ("When Congress codifies *a judicially defined concept*, it is presumed, absent an express statement to the contrary, that Congress intended to adopt the interpretation placed on that concept by the courts" [emphasis added]) and *Case v. Los Angeles Lumber Prods. Co., Ltd.*, 308 U.S. 106, 115-116, 60 S.Ct. 1, 84 L.Ed. 110 (1939) (interpreting the statutory phrase "fair and equitable" in a bankruptcy statute to incorporate a "fixed principle" established in court decisions). We reject the commissioner's argument because, unlike in the cases he cites, "benefit" in R.C. 5751.033(I) does not involve a "judicially defined" concept or a "fixed principle" established by case law.

{¶ 30} Here "benefit" bears its ordinary meaning: "something that guards, aids, or promotes well being: advantage, good." *Webster's Third New International Dictionary* 204 (2002). R.C. 5751.033(I) uses the word "benefit" in the phrase "benefit of what was purchased," but Defender did not sell police and fire service to ADT when it sold the service contracts. Instead of constituting the benefit derived from the bargain, the availability of government services is merely an assumption on which the contract is entered into.

*4. R.C. 5751.033(I) establishes situs where ADT uses or receives the benefit of the contract rights—not where ADT uses the contract rights themselves*

{¶ 31} The tax commissioner also asserts that ADT "uses or receives" the intangible contract rights in Ohio to generate income for itself. But that is not the correct analysis under the plain language of R.C. 5751.033(I). The statute focuses on where ADT "used or received" *the benefit of* the contract rights it purchased

from Defender, not on where ADT "used or received" the contract rights themselves.

{¶ 32} The tax commissioner points to R.C. 5751.033(F), which "allows Ohio to tax the 'right to use' a trademark in Ohio." Division (F) does link tax situs to the use of intellectual property in Ohio. But this case does not address license fees for intellectual property, and all agree that the analysis here is controlled by R.C. 5751.033(I), not division (F). Under division (I), situs is determined not by looking at where ADT uses the contract rights, but where ADT "uses or receives *the benefit of*" the contract rights.

{¶ 33} Likewise, the cases cited by the commissioner are inapposite. Taking *Geoffrey, Inc. v. South Carolina Tax Comm.*, 313 S.C. 15, 437 S.E.2d 13 (1993), as the paradigm case, we note that the South Carolina Supreme Court held that the state could impose income tax on Geoffrey's royalty income to the extent that Geoffrey purposefully availed itself of the state's protections by licensing its trademarks for use in that state. In *Geoffrey*, the taxpayer was deemed to have used the trademarks themselves in South Carolina but arguably received the *benefit* of its license agreements in its home state, Delaware. Applied to that situation, division (I) of R.C. 5751.033 would establish situs at the latter, not the former.

### C. We need not reach Defender's third proposition of law

{¶ 34} Because we rule in Defender's favor on its statutory claim, we need not reach the constitutional claim set forth under its third proposition of law.

### V. CONCLUSION

{¶ 35} For the foregoing reasons, we reverse the judgment of the court of appeals. We also remand to the tax commissioner with instructions that he issue refunds for 2011, 2012, and 2013 in the amounts set forth in the refund claim, plus the amount of any interest that may be provided for by statute. *See Corrigan v. Testa*, 149 Ohio St.3d 18, 2016-Ohio-2805, 73 N.E.3d 381, ¶ 71 (cause remanded to the tax commissioner for issuance of refunds).

Judgment reversed
and cause remanded.

KENNEDY, SINGER, FISCHER, DEWINE, DONNELLY, and STEWART, JJ., concur.

ARLENE SINGER, J., of the Sixth District Court of Appeals, sitting for FRENCH, J.

_____

Buckingham, Doolittle & Burroughs, L.L.C., Richard B. Fry III, and Steven A. Dimengo, for appellant.

Dave Yost, Attorney General, Benjamin M. Flowers, Solicitor General, Michael J. Hendershot, Chief Deputy Solicitor General, and Christine Mesirow, Assistant Attorney General, for appellee.

_____