CONSOLIDATION COAL CO., HANNA COAL CO. DIVISION, APPELLEE AND CROSS-APPELLANT, *v.* KOSYDAR, TAX COMMR., APPELLANT AND CROSS-APPELLEE.

[Cite as Consolidation Coal Co. v. Kosydar (1975), 42 Ohio St. 2d 189.]

(No. 74-144—Decided April 30, 1975.)

*Messrs. Jackson, Kelly, Holt & O'Farrell, Mr. Thomas N. Chambers, Messrs. Power, Jones & Schneider* and *Mr. Andrew T. Jones,* for appellee and cross-appellant.

*Mr. William J. Brown,* attorney general, and *Mr. John C. Duffy, Jr.,* for appellant and cross-appellee.

*Per Curiam.* The issue for determination here is whether the items described above are used or consumed "* * * directly in the production of tangible personal property for sale by * * * mining * * *." R. C. 5739.01(E) (2).

This "direct use" exception has been the subject of a number of cases before this court. The test used is found in *Youngstown Bldg. Material & Fuel Co.* v. *Bowers* (1958), 167 Ohio St. 363, 367:

"In attempting to interpret the ambiguous word, 'directly,' as used by the General Assembly, this court has adopted a physical test: When does the manufacturing or processing activity begin and end, and is the property used or consumed during and in the manufacturing or processing period?"

That test, coupled with the principles announced in *National Tube Co.* v. *Glander* (1952), 157 Ohio St. 407, that every sale or use is presumed taxable and that exceptions are strictly construed, form the basis for this court's examination and determination.

The operations here in question include both strip and underground mining. In the area of "mining" the taxpayer must establish that the operation involved is mining and that the property claimed to be excepted from taxation is used or consumed directly in the mining operation. *Fyr-Fyter Co.* v. *Glander* (1948), 150 Ohio St. 118, 124.

*Dye Coal Co.* v. *Evatt* (1944), 144 Ohio St. 233, defined mining as "the business of operating a mine."

Further, the court, at page 235, adopted the following definition of a mine:

" 'Mine' means an underground or surface excavation, or development with or without shafts, slopes, drifts or tunnels for the extraction of coal, gypsum, asphalt, rock or other materials (excluding natural gas and petroleum) containing the same with hoisting or haulage equipment and appliances for the extraction of coal, gypsum, asphalt, rock or other materials containing the same; and shall embrace any and all of the land or property of the mining plant, and the surface and underground, that is used or contrib-

utes directly or indirectly to the mining properties, concentration or handling of coal * * *."

Examining that decision, and others of this court in the "mining" area, the Board of Tax Appeals determined that underground mining begins with the digging of the mine shaft and that strip or surface mining begins with the removal of the overburden or surface earth from the vein. The determination made by the Board of Tax Appeals appears to be based on a proper application of the controlling decisions of this court. Our review of the record in this case, and the application of those legal principles made to the facts presented, does not reveal that the decisions of the board were unreasonable or unlawful.

Upon that basis, we affirm the decision of the Board of Tax Appeals as it relates to Exhibits 5A, 6p.1, 6p.4, and 10.

A related issue was involved in determining the end of mining operations. The coal blending facility, Exhibit 12, was found by the board to be directly used in the mining process. Exception from taxation of that coal blending facility was contested by the Tax Commissioner on the ground that the mining operation had ended prior to the blending. However, *France Co.* v. *Evatt* (1944), 143 Ohio St. 455, 458, allowed an exception for the blending of crushed stone:

"The evidence as to the operations of the defendant relating to its product * * * shows that it was a continuing process necessary to prepare the product for market. * * *."

The evidence provided by Consolidation Coal Co. concerning blending high and low BTU content coal was sufficient for the board to reach the same result.

Consolidation Coal Co. claims that equipment used to reclaim strip-mined lands, Exhibit 22, should be excepted from taxation. The board denied this exception Our examination of the record does not show that the operation was necessarily a direct use or consumption in the mining operation, and we defer to the board's conclusion.

Exhibit 18 concerns repairs to a limestone plant which appellee operates. The Tax Commissioner argues that ap-

pellee must show that the primary use of the plant is production *for sale* of limestone. Since appellee has used over 50% of the limestone produced in its coal mining business, the commissioner urges that the exception should not be allowed. However, there is evidence in the record that appellee is in the business of producing limestone for sale, and we will not disturb the finding of the board to that effect.

Exhibit 13 concerned equipment used in blasting for strip mine operations. This equipment was held to be taxable by the Board of Tax Appeals. In *Bailey* v. *Evatt* (1944), 142 Ohio St. 616, it was held that equipment used to strip soil from natural gravel deposits was excepted from taxation because such equipment was used directly in mining. That decision was based on an analogy drawn to surface or strip mining of coal. The Tax Commissioner and the Board of Tax Appeals have continued to allow exceptions of this type for shovels and other equipment used to remove overburden from coal.

In an effort to clarify his position, the Tax Commissioner promulgated a rule setting out allowable exemptions:

TX-15-09, in pertinent part, provides:

"Persons engaged in the production of tangible personal property for sale by mining, may claim exemption when purchasing:

"(1) Machinery, equipment, or other personal property used or consumed principally in a mine or excavation for the extraction from the earth of a substance classed geologically as a mineral."

Under that rule, the Tax Commissioner has allowed an exemption for the "Davy drill" attached to the truck in question. This treatment of the truck and the bulldozer used to pull the explosives as separate entities for tax purposes finds support in *Youngstown Bldg. Material & Fuel Co.* v. *Bowers, supra* (167 Ohio St. 363), and is neither unreasonable nor unlawful.

Exhibits 14 and 14A, equipment used for the maintenance and repair of haul roads, was also examined in reference to applicable legal principles and TX-15-09 and no

exception allowed. While there was evidence in the record that indicated the maintenance was essential to the mining operation, that equipment does not come directly within the exceptions allowed in TX-15-09, and we cannot say that, as a matter of law, they are used or consumed directly in the mining process.

The distinctions made by the board in reference to exceptions allowed or denied on purchases of safety equipment in Exhibits 1 and 4 are factual determinations made after a review of the applicable law. While the lines drawn by the board might seem arbitrary, we are satisfied that the board's decision is neither unreasonable nor unlawful. See *Youngstown Bldg. Material & Fuel Co.* v. *Bowers, supra* (167 Ohio St. 363).

Finally, the miscellaneous labor items evidenced in Exhibits 7 and 7A are questioned by the Tax Commissioner on procedural grounds. He argues that the labor items, which are excepted, may not be considered by the Board of Tax Appeals since they were not specified in the notice of appeal to the board. However, we are satisfied that the Tax Commissioner was given adequate notice of the challenged labor charges in that the entire assessment was put in issue, and that labor charges made up at least a part of some of the specific portions of the assessment which were questioned in the notice of appeal. In addition, at the hearing before the Board of Tax Appeals, no objection was made to the testimony offered by Consolidation Coal Co. concerning labor charges. The board had jurisdiction over the entire assessment and we affirm its determination in this area.

*Decision affirmed.*

O'Neill, C. J., Herbert, Corrigan, Stern, Celebrezze, W. Brown and P. Brown, JJ., concur.