KILBARGER CONSTRUCTION, INC., APPELLANT, *v.*
LIMBACH, TAX COMMR., APPELLEE.

[Cite as Kilbarger Constr., Inc. *v.* Limbach (1988), 37 Ohio St. 3d 234.]

(No. 87-968—Submitted February 17, 1988—Decided June 29, 1988.)

*Vorys, Sater, Seymour & Pease, Raymond D. Anderson, Jerry D. Jordan* and *Matthew J. Barrett,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Mark A. Engel,* for appellee.

REILLY, J. This court is requested to determine if the subject property is used directly in the production of crude oil and natural gas or in the exploration for crude oil and natural gas.

Appellee audited appellant's purchases from July 1, 1979 through March 31, 1982. Appellee charged a sales and use tax upon two bulldozers which were used to clear a path to the drilling site and to clear and level the site. Appellee assessed another bulldozer which was used to build the access roads to the site and to build culverts. Four more assessed bulldozers were used to prepare the right-of-way for flow lines from the drilling site to oil storage tanks and to backfill the trenches in which the flow lines were buried. Also assessed was the backhoe which dug the trench in which the flow lines were buried. A water vacuum truck was conceded to be taxable. None of the contested equipment was used in drilling the well; it was all used to prepare the site for the drilling.

The BTA determined that the start of actual drilling was the beginning of the production process. Since this equipment was used prior to the actual drilling, an exception under R.C. 5739.01(E)(2) was denied. The court of appeals declined to consider appellant's argument which focused upon the "rendering services" portion of the exception; however, appellant did not raise this issue before the BTA.

The appellate court found the statute to be ambiguous. Nevertheless, the court did not find that the language of the statute included the exception from taxation sought by appellant and affirmed the decision of the BTA. Moreover, the court of appeals rejected appellant's assertion that appellee abused her discretion by denying the request for total remission of the statutory penalty.

Although R.C. 5739.02 levies an excise tax upon each retail sale made in Ohio, R.C. 5739.01(E)(2) provides the following exception, at issue herein:

"(E) 'Retail sale' and 'sales at retail' include all sales except those in which the purpose of the consumer is:

"* * *

"(2) * * * [T]o use or consume the thing transferred directly in the * * * production of crude oil and natural gas * * *, and persons engaged in rendering * * * services in the exploration for, and production of, crude oil and natural gas, for others are deemed engaged directly in * * * exploration for, and production of, crude oil and natural gas * * *."

Appellant contends that the contested equipment is used by a person engaged in rendering services in the exploration for, and production of, crude oil and natural gas, and such use is deemed to be involved directly in such exploration and production. Appellant does not contest the requirement that the equipment be used directly in the production of crude oil and natural gas, but it disputes where direct use begins.

Appellant maintains further that the language "exploration for" ex-

pands the exception to include site preparation. It presents the question as whether moving dirt to prepare an oil and gas well site is part of "exploration" and "production." Appellee emphasizes that exploration for and production of crude oil and natural gas are two distinct activities; and only items used directly in exploration or production are excepted from taxation.

The exception for items used directly in the production of crude oil and natural gas was included in 1937 in H.B. No. 694 (116 Ohio Laws, Part II, 323, 324). This was shortly after the sales tax had initially been enacted in 1934. The exception was amplified in 1947 by H.B. No. 453 (122 Ohio Laws 725, 726), when the General Assembly added the language, "and services in the exploration for and production of crude oil and natural gas for others," shall be deemed to be engaged directly in "* * * exploration for and production of crude oil and natural gas." That wording included the phrase "exploration for" in two places, but the exception had only provided for the purchase of items used or consumed directly in the "production of crude oil and natural gas."

Appellant claims that such additional language expands the exception to include the activities involved in the exploration for crude oil. Appellee does not question this assertion but only disputes whether appellant made that argument in the court of appeals. Appellee seems to acknowledge that the exception is extended to activities in the exploration for crude oil and natural gas but contends that the property involved herein was not used directly in the production of or exploration for crude oil and natural gas.

This court has decided one case concerning this exception. In *McWood Corp.* v. *Porterfield* (1968), 13 Ohio St. 2d 143, 42 O.O. 2d 368, 235 N.E. 2d

236, it affirmed a decision of the BTA which denied exception to transportation equipment that conveyed natural gas from various oil wells to the processing plant. The court found that the BTA correctly relied upon *Powhatan Mining Co.* v. *Peck* (1953), 160 Ohio St. 389, 52 O.O. 246, 116 N.E. 2d 426, a case which interpreted the mining exception. The *Powhatan* court held that to regard transportation to be direct and excepted, it must be between essential steps of the activity and not to or from that activity. The *McWood* court also approved of the BTA's reliance upon *Youngstown Bldg. Material & Fuel Co.* v. *Bowers* (1958), 167 Ohio St. 363, 5 O.O. 2d 3, 149 N.E. 2d 1, which rejected the "integrated plant" theory and first stated the test for when an item is used or consumed directly in manufacturing to be: "[W]hen does the actual manufacturing or processing activity begin and end, and is the property used or consumed during and in the manufacturing or processing period." (Emphasis deleted.) *Id.* at syllabus.

There are decisions of this court involving manufacturing, particularly *Youngstown Bldg. Material & Fuel Co., supra,* and *McWood, supra,* which have held that the exception was provided for those items as to which the principal use is directly a part of the drilling activity, which activity commences when the drilling of the hole starts and terminates when the hole has been drilled to its total depth. The equipment at issue, bulldozers used for site preparation, were not used directly in exploration for or production of crude oil and natural gas within the meaning of the code and thus are not excepted.

Appellee asks this court to draw an analogy from *Consolidation Coal Co.* v. *Kosydar* (1975), 42 Ohio St. 2d 189, 71 O.O. 2d 180, 326 N.E. 2d 864, which af-

firmed a decision of the BTA which held that underground mining, for the purposes of the mining exception, begins with the digging of the mine shaft. This decision also cited *Youngstown Bldg. Material & Fuel Co., supra,* for the physical test to be used to interpret the word "directly."

That approach involves two questions: Whether it is appropriate to apply manufacturing and mining exception cases in interpreting the word "directly" as it is used in the questioned exception, and whether the addition of the phrase "exploration for" expands the exception to include site preparation.

In response to the first question, this court has used manufacturing exception decisions in applying the physical test approved in mining exception cases. It is reasonable to use both types of cases in applying the same language to the exception.

As to this case, in determining the period in which crude oil production occurs, it is noted that "produce" is defined to mean, "[t]o bring to the surface, as oil." Black's Law Dictionary (5 Ed. 1979) 1088. Arguably, then, production does not begin until oil· is actually brought to the surface. The equipment used to bring the oil to the surface would be entitled to exception, but the drilling equipment would not. A line must be drawn concerning extracting commodities from underground in mining cases. This court and the BTA have drawn that line at the point where the ground is broken. Hence, for the purposes of applying the sales tax exception in cases involving the production of crude oil and natural gas, actual drilling is the appropriate place for the commencement of the activity of production.

In response to the second question, appellee apparently concedes that exploration for crude oil and natural gas is also within the scope of the exception. She maintains, however, that not all activities involved with exploration are excepted, only those that are directly involved with exploration. Black's Law Dictionary (5 Ed. 1979) 520 defines "exploration" as:

"The examination and investigation of land supposed to contain valuable minerals, by drilling, boring, sinking shafts, driving tunnels, and other means, for the purpose of discovering the presence of ore and its extent."

"Exploration," thus, involves an activity in which there is a search for oil. "Exploration" used in conjunction with "production" of oil entails the same kind of search. Both activities involve drilling. The distinction is that exploration may or may not result in a producing well, while production results from the finding of a producing well. Thus, exploration and production can be used together to form one exception involving the purchase of items used or consumed directly in the production of crude oil and natural gas. This connection perceives that the search for oil is not always successful and that the production of crude oil includes activities related to the search.

The use of "exploration" in this manner, however, does not expand the exception to include site preparation. Drilling is done in exploration and in production. Where production occurs, the exploration has been successful. If the line is drawn at the actual drilling of the well, it applies to both the unsuccessful ánd the successful projects. The decision of the BTA in this case is consistent with its prior decisions concerning this exception, which BTA decisions are also consistent with the decisions of this court construing the manufacturing and mining exceptions. Thus, the court of appeals properly affirmed the BTA's determination

herein, which was reasonable and lawful.

In its second proposition of law, appellant alleges that appellee abused her discretion in refusing to remit the statutory penalties. The problem with this contention is that appellant did not request the commissioner to remit the penalties.

R.C. 5739.13, at the time of the assessment, provided in pertinent part:

"A penalty of fifteen per cent shall be added to the amount of every assessment made under this section. The commissioner may adopt and promulgate rules providing for the remission of penalties added to the assessments made under this section."

Ohio Adm. Code 5703-9-05, as it existed on the date of assessment, August 19, 1982, provided the following, in pertinent part:

"(A) A person assessed sales tax * * * may request of the tax commissioner remission of the fifteen per cent penalty. Such a request must be in writing and filed with the commissioner personally or by * * * certified mail within thirty days of the receipt of the notice of assessment[.] [I]f the request for remisssion [sic] of penalty is the only relief sought, the entire assessment, including all charges and penalties, must be paid in full within the same thirty-day period.

"(B) In the event that a petition for reassessment is filed timely contesting the validity or legality of the assessment, the request for remission of penalty may be included as part of the petition or may be filed separately. * * *"

A review of the petition for reassessment does not disclose that appellant requested remission of the penalties. There was no other document filed with the commissioner making such request.

"The remission of a penalty under * * * [R.C. 5739.13] is discretionary with the Tax Commissioner and cannot be reversed by the Board of Tax Appeals unless an abuse of discretion is demonstrated." *Frankelite Co.* v. *Lindley* (1986), 28 Ohio St. 3d 29, 31, 28 OBR 90, 92, 502 N.E. 2d 213, 215. An abuse of discretion connotes a decision that is unreasonable, arbitrary, or unconscionable. *Jennings & Churella Constr. Co.* v. *Lindley* (1984), 10 Ohio St. 3d 67, 10 OBR 357, 461 N.E. 2d 897.

In any event, before appellee may exercise her discretion, such discretion must be invoked pursuant to the duly prescribed and promulgated rule. There could not have been an abuse of discretion which was not requested to be exercised; and there was no evidence presented concerning the alleged abuse of discretion. There was reference to a letter written by the Chief of the Legal Division of the Department of Taxation in 1960 in both the petition for reassessment and the notice of appeal to the BTA. The letter was not entered into evidence nor did appellant's witness, Ed Kilbarger, appellant's president, testify concerning appellant's reliance upon such letter. Therefore, there was no abuse of discretion by appellee in refusing to remit the statutory penalties.

The judgment of the court of appeals is affirmed.

*Judgment affirmed.*

SWEENEY, Acting C.J., LOCHER, DOUGLAS and YOUNG, JJ., concur.

HOLMES, J., dissents.

WRIGHT, J., dissents with opinion.

ARCHER E. REILLY, J., of the Tenth Appellate District, sitting for MOYER, C.J.

JOHN C. YOUNG, J., of the Tenth Appellate District, sitting for H. BROWN, J.

WRIGHT, J., dissenting. While I agree in large measure with the opinion of the majority, I strongly differ with the Board of Tax Appeals and the majority of this court when they uphold the proposition that the start of drilling of the well marks the beginning of the production process.

This holding is in error. The start of drilling is not the beginning of the production process; it is almost the last step in the production process. Presiding Judge Lawrence Grey spoke truly when he stated in his dissent below: "[A]n oil well is not simply a long narrow hole in the ground. It is a complex system of pits, trenches, and cuts into the contour of the earth. The drill is the machine that makes the long narrow hole. The bulldozers, the backhoe, and the vacuum truck are the machines that make the other parts of the well." The board's finding is correct only if the drill is the only implement that makes a well. The statute, R.C. 5739.01(E)(2), however, does not speak of "drilling" but of "production." Thus, the language of the statute itself militates a different conclusion than that reached by the majority.