LYONS, D.B.A. ED LYONS TRACTOR SERVICE, APPELLANT, *v.* LIMBACH, TAX COMMR., APPELLEE.
WHITE, APPELLANT, *v.* LIMBACH, TAX COMMR., APPELLEE.

[Cite as Lyons *v.* Limbach (1988), 40 Ohio St. 3d 92.]

(Nos. 87-343 and 87-561—Submitted September 21, 1988—Decided December 21, 1988.)

*Vorys, Sater, Seymour & Pease, Raymond D. Anderson* and *Matthew J. Barrett,* for appellants.

*Anthony J. Celebrezze, Jr.,* attorney general, *Mark A. Engel* and *Floyd J. Miller, Jr.,* for appellee.

*Emens, Hurd, Kegler & Ritter, Timothy J. Battaglia, Paul D. Ritter, Jr.* and *Steven R. Russi,* urging reversal for *amicus curiae,* Ohio Oil & Gas Association, in case No. 87-343.

*Per Curiam.* R.C. 5739.01(E)(2) provides for exception from the sales tax where the item purchased is used or consumed "* * * directly in the * * * production of crude oil and natural gas, * * * and persons engaged in rendering * * * services in the exploration for, and production of, crude oil and natural gas, for others are deemed engaged directly in * * * exploration for, and production of, crude oil and natural gas * * *."[1]

In *Kilbarger Constr., Inc.* v. *Limbach* (1988), 37 Ohio St. 3d 234, 525 N.E. 2d 483, we applied the reasoning found in our manufacturing- and mining-exception cases to oil and gas production cases. We approved the test found in *Youngstown Bldg. Material & Fuel Co.* v. *Bowers* (1958), 167 Ohio St. 363, 5 O.O. 2d 3, 149 N.E. 2d 1, for determining when an item is used directly in manufacturing. Under this test, the BTA must determine when the actual exploration for and production of crude oil and natural gas begins and ends, and whether the property is used or consumed during and in that period.

In *Consolidation Coal Co.* v. *Kosydar* (1975), 42 Ohio St. 2d 189, 192, 71 O.O. 2d 180, 182, 326 N.E. 2d 864, 867, this court affirmed a BTA decision that denied exception from the sales tax under R.C. 5739.01(E)(2) for equipment that was used to reclaim strip-mined lands. We held that the record did not show that the operation was necessarily a direct use or consumption in mining. Under this authority, we now hold that the reclamation equipment here is not used directly in the exploration for or production of crude oil and natural gas.

Furthermore, the statutory re-

quirement that well sites be reclaimed does not, in and of itself, require exception for the equipment. See *Fyr-Fiter Co.* v. *Glander* (1948), 150 Ohio St. 118, 37 O.O. 432, 80 N.E. 2d 776.

Appellants also argue that taxing this reclamation equipment while exempting reclamation equipment used by a mining company violates the Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution and Section 2, Article I of the Ohio Constitution.

After our decision in *Consolidation Coal Co.* v. *Kosydar, supra,* the General Assembly excepted purchases of equipment used in mining reclamation. 136 Ohio Laws, Part II, 3447; R.C. 5739.01(E)(10), now (E)(4). Appellants argue that there is no rational basis for differentiating between mining and oil and gas reclamation.

White raised this constitutional question in his notice of appeal to the BTA, but Lyons did not. Under *Cleveland Gear Co.* v. *Limbach* (1988), 35 Ohio St. 3d 229, 520 N.E. 2d 188, paragraph three of the syllabus, an appellant is required to raise this question in the notice of appeal to the BTA. Thus, as appellee argues, the question is before us as to appellant White but not as to appellant Lyons.

According to Rotunda, Nowak & Young, Treatise on Constitutional Law, Substance and Procedure (1986), Section 13.7, at 801:

"* * * If a tax classification does not employ a suspect classification or burden a fundamental right, the classification will be upheld so long as it has a rational relationship to a legitimate governmental interest. This rational basis standard involves a high degree of judicial deference to legislative bodies. * * *"

In *Allied Stores of Ohio, Inc.* v. *Bowers* (1959), 358 U.S. 522, 526-528,

---

[1] R.C. 5741.02(C)(2) provides a concomitant use tax exception.

the United States Supreme Court stated:

"* * * The States have a very wide discretion in the laying of their taxes. When dealing with their proper domestic concerns, and not trenching upon the prerogatives of the National Government or violating the guarantees of the Federal Constitution, the States have the attribute of sovereign powers in devising their fiscal systems to ensure revenues and foster their local interests. Of course, the States, in the exercise of their taxing power, are subject to the requirements of the Equal Protection Clause of the Fourteenth Amendment. But that clause imposes no iron rule of equality, prohibiting the flexibility and variety that are appropriate to reasonable schemes of state taxation. The State may impose different specific taxes upon different trades and professions and may vary the rate of excise upon various products. It is not required to resort to close distinctions or to maintain a precise, scientific uniformity with reference to composition, use or value. * * *

"But there is a point beyond which the State cannot go without violating the Equal Protection Clause. The State must proceed upon a rational basis and may not resort to a classification that is palpably arbitrary. * * * That a statute may discriminate in favor of a certain class does not render it arbitrary if the discrimination is founded upon a reasonable distinction, or difference in state policy. * * *''

Furthermore, the challenger to the validity of the statute must negate every conceivable basis which might support it. *Madden* v. *Kentucky* (1940), 309 U.S. 83, 88; *Lenhausen* v. *Lake Shore Auto Parts Co.* (1973), 410 U.S. 356, 364.

There is no evidence of record concerning the reclamation operation involved in mining. Thus, the record is not factually sufficient to compare oil and gas reclamation with mining reclamation.

Moreover, a comparison of the statutes requiring reclamation for both industries reveals that, under R.C. 1513.07, an application for a coal mining reclamation permit must contain, among other things, a map of the affected land, a geological impact statement, the name of the watershed, location of surface streams that will receive drainage, probable hydrologic consequences, accurate topographical maps, cross-section maps, and quality and locations of subsurface water. R.C. 1513.16 requires the miner to restore the land to support the uses that it was capable of supporting prior to mining, to compact the area to ensure stability and to prevent leaking of toxic wastes, and to grade the reclaimed area to restore the original contour with highwalls, spoil piles, and depressions eliminated. A miner must remove, store, and replace the topsoil, and must, thereafter, plant quick-growing plants. Similar provisions are contained in R.C. Chapter 1514 for the surface mining of other minerals.

Under R.C. 1509.072, an oil and gas well owner or his agent must fill all pits that contain brine and other waste products, remove concrete bases, drilling supplies and equipment not needed for production, and grade, terrace and reseed the area disturbed. After production is completed, the owner or his agent must plug the well, remove equipment and debris, and reseed the area.

A cursory inspection of these statutes reveals broader, more intense reclamation for mining operations than for oil and gas drilling. We hold that this difference is a rational basis to except the purchase of mining reclamation equipment and not oil and gas reclamation equipment.

Finally, appellant Lyons argues that the "frac" tanks that store water at the well site are excepted from taxation. Appellant cites *Hawthorn Mellody, Inc.* v. *Lindley* (1981), 65 Ohio St. 2d 47, 19 O.O. 3d 234, 417 N.E. 2d 1257. In that case, a refrigerant tank that was a part of a recirculation system that held ammonia for refrigeration was found to be an adjunct by the BTA and excepted. We affirmed. Appellant argues that that refrigerant tank is similar to its "frac" tanks.

The definition of "manufacturing" in R.C. 5739.01(R) includes "* * * adjuncts used during and in, and necessary to carry on and continue, production to complete a product at the same location after transforming or converting has commenced and before it has ended." There is no statutory definition of "exploration for, or production of, crude oil and natural gas"; consequently, there is no language declaring an adjunct to exploration for or production of oil and gas to be included in that operation and, thus, excepted. Our use of manufacturing and mining decisions for these oil and gas well cases has extended only to determining if an item is used directly in oil and gas production. Adjuncts are excepted under the manufacturing exception only because the General Assembly adopted the adjunct language. *Canton Malleable Iron Co.* v. *Porterfield* (1972), 30 Ohio St. 2d 163, 59 O.O. 2d 178, 283 N.E. 2d 434. The adjunct language is peculiar to the manufacturing exception and cannot be applied to the oil and gas production exception here.

Moreover, the tanks in *Hawthorn Mellody* can be distinguished from the instant tanks. In that case, the tanks were part of a recirculation system. Here, the tanks hold the water that is used or consumed in the fracturing process before production commences.

The use of the tanks is preliminary and preparatory to production.

In *Youngstown Bldg. Material & Fuel Co.* v. *Bowers, supra,* this court held that bins containing raw materials, which were later consumed in the processing, were not excepted. Earlier, in *Standard Oil Co.* v. *Peck* (1955), 163 Ohio St. 63, 56 O.O. 56, 125 N.E. 2d 342, this court affirmed a BTA decision that denied exception for tanks that stored crude oil and lubricating oil prior to the oil being refined. The similarity of these cases to the one at bar is evident. In all three cases, the tanks or bins stored material that was later used in the excepted manner. Under this authority, the "frac" tanks were not used directly in the exploration for or production of crude oil and natural gas, and thus are not excepted from taxation.

Therefore, the judgment of the court of appeals and the decision of the BTA are hereby affirmed.

*Judgment affirmed.*
*Decision affirmed.*

MOYER, C.J., SWEENEY, LOCHER and DOUGLAS, JJ., concur.

HOLMES, WRIGHT and BOWMAN, JJ., concur in part and dissent in part.

DONNA BOWMAN, J., of the Tenth Appellate District, sitting for H. BROWN, J.

WRIGHT, J., concurring in part and dissenting in part. I agree with the majority in case No. 87-561 and, partly, in case No. 87-343. However, I respectfully dissent in case No. 87-343 regarding the "frac" tanks.

As I stated in my dissent in *Kilbarger Constr., Inc.* v. *Limbach* (1988), 37 Ohio St. 3d 234, 525 N.E. 2d 483, I believe that oil and gas production encompasses more than drilling because

an oil well is a complex system of pits, trenches, and cuts into the earth. Consequently, the exception for oil and gas production encompasses more than the majority allowed there and allows here.

In this case, Lyons must fracture the underlying geological formations to free the oil and bring it to the surface, thus producing oil. Lyons fractures the formation by forcing a mixture of fresh water, sand, and chemicals into the well casing and out into the formation. This softens the rock so that the oil will flow through the rock to be extracted.

This "fracking" requires much fresh water, and this quantity of water is not always readily available. The water must be transported to the well and contained in a number of "frac" tanks. Since production could not occur without these tanks to contain the water, I conclude that they are obviously used directly in the production process.

Moreover, in *Hawthorn Mellody, Inc.* v. *Lindley* (1981), 65 Ohio St. 2d 47, 19 O.O. 3d 234, 417 N.E. 2d 1257, this court excepted as adjuncts to manufacturing "Muller" tanks that held ice cream flavoring. The tanks were connected by piping to containers in which the unflavored ice cream was mixed with the flavoring. There is no real distinction in the use of the tanks in *Hawthorn Mellody* and here. Thus, I must respectfully dissent.

HOLMES and BOWMAN, JJ., concur in the foregoing opinion.