[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Faith Ranch & Farms Fund, Inc. v. PNC Bank, Natl. Assn.*, Slip Opinion No. 2026-Ohio-1145.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2026-OHIO-1145

FAITH RANCH AND FARMS FUND, INC., APPELLEE, *v.* PNC BANK, NATIONAL ASSOCIATION ET AL., APPELLANTS.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Faith Ranch & Farms Fund, Inc. v. PNC Bank, Natl. Assn.*, Slip Opinion No. 2026-Ohio-1145.]

*Contracts—Mineral rights—Oil and gas—Unambiguous reservation clause, taken as a whole, makes clear that grantor did not intend reservation to include oil and gas—Court of appeals' judgment affirmed.*

(No. 2023-1475—Submitted January 7, 2025—Decided April 2, 2026.)

APPEAL from the Court of Appeals for Harrison County,

Nos. 23 HA 0001 and 23 HA 0002, 2023-Ohio-3608.

_____

SHANAHAN, J., authored the opinion of the court, which KENNEDY, C.J., and FISCHER, DEWINE, DETERS, and HAWKINS, JJ., joined.  BRUNNER, J., dissented, with an opinion.

**SHANAHAN, J.**

{¶ 1} In a 1953 deed conveying parcels of land, grantor C.C. Fay reserved the "right to mine and remove . . . coal or other minerals of any vein." Appellee, Faith Ranch and Farms Fund, Inc., the current owner of the parcels, claims that that reservation does not apply to oil and gas under the parcels and sought to quiet title to the property. Appellants, the heirs, beneficiaries, successors, and/or assigns of C.C. Fay and his wife Agnes Fay ("the heirs"), claim that the deed's reservation applies to oil and gas under the parcels. The trial court found that the deed's language was not broad enough to include oil and gas. The heirs appealed to the Seventh District Court of Appeals. The court of appeals determined that the deed's reservation language was ambiguous and looked to evidence outside of the deed to determine the parties' intent. 2023-Ohio-3608, ¶ 18-19 (7th Dist.). It concluded that the evidence demonstrated that the grantor did not intend to reserve the oil and gas rights and affirmed the trial court's judgment on that basis. *Id.* at ¶ 25.

{¶ 2} We conclude that the Seventh District reached the right result, but we reach that result for a different reason. Because the deed's reservation clause is unambiguous, there is no need to look beyond its four corners. Taken as a whole, the reservation clause makes it clear that the grantor did not intend for the reservation to include oil and gas. We therefore affirm the judgment of the Seventh District.

## I. BACKGROUND

{¶ 3} In 1953, C.C. Fay, with Agnes Fay also signing for the purpose of releasing her dower rights, conveyed parcels of land to Judson Rosebush subject to the following reservation:

> EXCEPTING AND RESERVING to the Grantor from the lands herein conveyed all the coal below the horizon of the No. 8 coal, if any under vein exists thereunder, and other minerals, with the right

to mine and remove such coal or other minerals of any vein, using any convenient underground mining methods, and to transport coal and minerals from other premises through and under the surface of said lands; and particularly reserving the seam of coal, if any, now being mined at the Nelm's mine of the Y.&O. Coal Company, near Unionvale, Ohio, with all mining rights necessary or convenient for the mining and removal thereof, and the right to transport other coal of the same vein under said lands.

(Capitalization in original.) In 1973, the parcels were transferred to Faith Ranch and Farms Fund, Inc. ("Faith Ranch"). C.C. Fay owned the reserved minerals until his death in 1983. The reservation was then transferred to his heirs.[1] In 2021, the heirs filed an action to reopen C.C. Fay's estate, claiming that the estate is the owner of the oil and gas lying under the parcels. Also in 2021, Faith Ranch filed this action seeking a declaratory judgment that the reservation did not include the oil and gas and to quiet title to the oil and gas rights in Faith Ranch's favor.[2] The heirs filed an answer and counterclaim, mirroring Faith Ranch's requests for declaratory relief and to quiet title.

{¶ 4} Faith Ranch and the heirs filed competing motions for summary judgment. The trial court granted summary judgment to Faith Ranch, concluding that the reservation clearly and unambiguously reserved coal and other minerals obtained by mining and that there was no language that would broaden the

---

1. The heirs who are appellants here are Sidney Turner, Michele M. Lazzaro, Esq., trustee of the Sidney Turner Trust created by the Last Will and Testament of Virginia Fay Mayer, Marilyn Stolz, individually and as successor trustee of the Virginia Fay Mayer Trust, as modified January 21, 2011, James M. Roller, and Laurie Edna Evanko, individually and as successor trustee of the Frederick Roller Revocable Trust dated October 18, 2012.

2. PNC Bank was dismissed from the case on April 25, 2022.

reservation to include oil and gas.  Harrison C.P. No. CVH 2021-0062, 2 (Jan. 9, 2023); *see also* Harrison C.P. No. CVH 2021-0062 (Sept. 19, 2022).

{¶ 5} The heirs appealed to the Seventh District.  Unlike the trial court, the appellate court determined that the reservation was ambiguous.  2023-Ohio-3608 at ¶ 19 (7th Dist.).  The court turned to evidence outside the deed to determine the parties' intent when the parcels were conveyed.  *Id.*  In particular, the court reviewed three other deeds executed by C.C. Fay in the ten years before the drafting of the deed at issue in this case.  *Id.* at ¶ 20-23.  The court found that in those deeds, Fay had specifically used the term "oil and gas" when he wanted to reserve that interest.  *Id.* at ¶ 24.  One 1944 deed that the court examined provides an example.  In that deed, as quoted by the Seventh District, Fay had conveyed a tract of land with the following reservation: "'Excepting and reserving *coal and mineral rights* underlying said premises, with right to remove same, but not through surface area.  *Reserving, also, the oil and gas rights, for drilling and removing*.'"  (Emphasis in original.)  *Id.* at ¶ 22.

{¶ 6} In the Seventh District's view, C.C. Fay's other deeds demonstrated that he "possessed the knowledge to decisively include or not include the specific words 'oil and gas' in drafting the reservations in the deeds he conveyed."  *Id.* at ¶ 24.  And the Seventh District concluded that because Fay did not include the phrase "oil and gas" in the conveyance to Rosebush, he did not intend to reserve the rights to the oil and gas under the parcels.  *See id.*  The court of appeals affirmed the trial court's judgment on this basis.  *Id.* at ¶ 26.

{¶ 7} The heirs appealed to this court, and we accepted jurisdiction on the following proposition of law:

> *Alexander* [*v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241 (1978), paragraph two of the syllabus] requires that common words in a written instrument be given their ordinary meaning unless absurdity

4

results or some other meaning is clearly evidenced from the overall contents of the instrument, and "mine," "mining" and "vein" are common words whose ordinary meanings encompass oil and gas exploration.

*See* 2024-Ohio-335.

{¶ 8} We conclude that the reservation in the deed is unambiguous and that oil and gas were not reserved to C.C. Fay. The reservation clause, taken as a whole, demonstrates that Fay did not intend to include oil and gas with the other minerals reserved in the deed.

## II. ANALYSIS

{¶ 9} The parties agree that summary judgment is appropriate in this case. The question is: Which party is entitled to summary judgment? *See Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327-328 (1977) (summary judgment is properly rendered to the party who demonstrates that there is no genuine issue as to any material fact, that the moving party is entitled to judgment as a matter of law, and that reasonable minds can only conclude that judgment must be granted to the moving party). And the answer to that question hinges on whether the deed's reservation of "other minerals" included oil and gas.

{¶ 10} The heirs argue that the reservation of rights as to "other minerals" includes rights to oil and gas unless other language makes it clear that oil and gas are excluded. And here, the heirs maintain, the deed did not otherwise indicate that oil and gas were excluded from the phrase "other minerals." Faith Ranch, on the other hand, contends that the reservation did not include oil and gas because the definition of "minerals" does not include oil and gas. As we will discuss below, we agree with the heirs that the phrase "other minerals" may include oil and gas, but we conclude that the context in which the phrase was used in the deed at issue here makes clear that oil and gas were excluded from this reservation.

## A. The phrase "other minerals" may, but does not necessarily, include oil and gas

{¶ 11} As early as 1897, this court held that "[p]etroleum oil is a mineral." *Kelly v. Ohio Oil Co.*, 57 Ohio St. 317 (1897), paragraph one of the syllabus. But the next year we qualified that conclusion and explained that the phrase "other minerals" may, but does not necessarily, include oil and gas. *Detlor v. Holland*, 57 Ohio St. 492, 504 (1898).

{¶ 12} In *Detlor*, the question was whether a deed that conveyed "all the coal of every variety, and all the iron ore, fire clay, and other valuable minerals, in, on, or under the . . . premises" along with "the right . . . of mining and removing such coal, ore, or other minerals" conveyed title to the oil under the premises. *Id.* at paragraph one of the syllabus. The court explained that "[t]he words 'other minerals,' or 'other valuable minerals,' taken in their broadest sense, would include petroleum oil; but the question [there was], did the parties intend to include such oil in the mining right?" *Id.* at 504. The court resolved the question by looking to the language of the grant. The court reasoned: "The incidents here granted are all such as are peculiarly applicable to the mining of minerals in place, and not to such as are in their nature of a migratory character, such as oil or gas. Nothing is said about derricks, pipe lines, tanks, the use of water for drilling, or the removal of machinery used in drilling or operating oil or gas wells." *Id.* at 503. The court concluded that the grant did not include the oil below the premises because "apt words" were not used to express the intention to include the oil and gas. *Id.* at 504; *see also O'Bradovich v. Hess Ohio Devs., L.L.C.*, 2021-Ohio-1287, ¶ 31 (7th Dist.) ("[T]he general phrase ['other minerals'] may include oil and gas rights so long as the language can be reasonably seen to include these minerals in some way and other language in the deed does not exclude these minerals.").[3]

---

3. Seemingly unsatisfied with our conclusion that "other minerals" may include oil and gas when the context dictates, the dissent points to language in the Ohio Constitution, Article II, Section 36

{¶ 13} Faith Ranch's reliance on the meaning of "mineral" is misplaced, because a review of dictionary definitions of the word demonstrates that its meaning can vary. For example, it is defined as "a solid homogenous crystalline chemical element or compound" (which would not include oil or gas). *Webster's Third New International Dictionary* (2002). And it is also defined as "any of various naturally occurring homogeneous or apparently homogenous and usu. but not necessarily solid substances (as ore, coal, asbestos, asphalt, borax, clay, . . . petroleum, water, natural gas, air, and gases extracted from the air)" (which would include oil and gas). *Id.*

{¶ 14} But, contrary to the Seventh District's conclusion, the fact that there may be different definitions of the word "mineral" does not make the use of the word ambiguous. The mere fact that there are two different ways to define a term does not render the term ambiguous. *State v. Gwynne*, 2023-Ohio-3851, ¶ 20. Rather, a text is ambiguous when it is susceptible to "two equally persuasive and competing interpretations." *State ex rel. Ferrara v. Trumbull Cty. Bd. of Elections*, 2021-Ohio-3156, ¶ 21. When interpreting a text, a court must consider the language as a whole, "as informed by the canons of construction and context, and determine whether one best reading emerges," *Gwynne* at ¶ 20. If one best meaning emerges, the text is not ambiguous. *See id.*

{¶ 15} To determine whether there is only one best interpretation of the deed, we do the same as we did in *Detlor*: we look to the context in which the word was used. In so doing, here we conclude that the grantor did not intend to include oil and gas in the deed's reservation.[4]

---

that says "[l]aws may be passed . . . to provide for the regulation of methods of mining, weighing, measuring and marketing coal, oil, gas and all other minerals." *See* dissenting opinion, ¶ 34. While we disagree with the dissent's assertion that the Ohio Constitution compels the conclusion that the phrase "other minerals" in the deed's reservation includes oil and gas, we acknowledge that as early as 1913, Ohio recognized that the phrase "other minerals" could include oil and gas.

**B. The reservation's language establishes an intent to exclude oil and gas from the reservation**

{¶ 16} The heirs argue that nothing in the reservation demonstrates an intent to exclude oil and gas from the reservation. We disagree. Taken as a whole, the language of the reservation—including the words mine, mining, and vein— establishes an intent to exclude oil and gas from the reservation. *See O'Bradovich*, 2021-Ohio-1287, at ¶ 26 (7th Dist.) (other language in a deed may evidence an intent to exclude oil and gas from a reservation of other minerals).

{¶ 17} As we explain below, when considered in the context of the entire reservation, the use of the phrase "other minerals" does not demonstrate an intent to include oil and gas in the reservation.

*1. While "mine" and "mining" could refer to oil and gas, these terms are more commonly associated with solid mineral extraction*

{¶ 18} In looking to dictionary definitions near the time the C.C. Fay reservation was drafted, we see that *The New Century Dictionary of the English Language* (1948) defines "mine" as "[a]n excavation made in the earth for the purpose of getting out ores, precious stones, coal, etc." and "[t]o dig in the earth for the purpose of extracting ores, coal, etc." Modern sources include similar definitions. *See Webster's Third New International Dictionary* (2002) (defining a "mine" as "a pit or excavation in the earth from which mineral substances (as ores, precious stones, or coal) are taken by digging or by some other method of extraction").

{¶ 19} Similarly, this court has defined "mine" as "an underground or surface excavation . . . for the extraction of coal, gypsum, asphalt, rock or other

---

4. The dissent remarks that we are finding that the phrase "other minerals" does not include oil and gas, because that interpretation is "more common." Dissenting opinion at ¶ 31. In fact, we are finding that the phrase "other minerals" does not include oil and gas because, as directed by *Detlor*, we have reviewed the context in which the phrase was used, and that context supports the conclusion that the grantor did not intend to include oil and gas in the reservation.

materials (excluding natural gas and petroleum)." *Consolidation Coal Co., Hanna Coal Co. Div. v. Kosydar*, 42 Ohio St.2d 189, 191 (1975), quoting *Dye Coal Co. v. Evatt*, 144 Ohio St. 233, 235 (1944).

{¶ 20} Both the dictionary definitions of "mine" and this court's 1944 definition contemplate solid substances. That understanding is also reflected in caselaw from other courts in Ohio. For example, in 1924, the Fifth District determined that the following language did not show an intent to transfer the rights to oil and gas: "All the coal and other minerals under the surface" with a right "to enter upon said land, make all excavations, drains, entries, and structures of whatever nature as may be necessary to conveniently take out said minerals . . . ." *Gordon v. Carter Oil Co.*, 19 Ohio App. 319, 320 (5th Dist. 1924). And more recently, the Seventh District agreed with the trial court's finding that the grantor in an 1848 deed did not reserve oil and gas interests because the use of the term mineral in the reservation "showed [that] the intent of the parties to the deed was to reserve coal and other mined minerals, not migratory minerals." *Sheba v. Kautz*, 2017-Ohio-7699, ¶ 1, 36 (7th Dist.); *see also Muffley v. M.B. Operating Co., Inc.*, 1986 Ohio App. LEXIS 8865, *1-2 (5th Dist. Oct. 27, 1986) (concluding that the following 1960 reservation did not include oil and gas: "all minerals, clay, and coal underlying the soil, subject only to the condition that the removal of said minerals, clay, and coal shall be without damage to the surface of said land except to provide air shafts and escape for mine water").

{¶ 21} In contrast to the use of words that are commonly associated with solid mineral extraction, the reservation clause does not use words that are commonly associated with extracting oil and gas—words and phrases such as "derricks," "pipe lines," "tanks," "the use of water for drilling," and "machinery used in drilling or operating oil or gas wells," *Detlor*, 57 Ohio St. at 503. The absence of words commonly associated with extracting oil and gas indicates that oil and gas were not included in the reservation.

### 2. The use of the word "vein" supports a finding that the reservation does not include oil and gas

{¶ 22} The use of the word "vein" provides further context for understanding the intended meaning of the phrase "other minerals" as used in the reservation clause. "Vein" was commonly understood to refer to "a *vein* of coal." (Emphasis in original.) *Webster's New International Dictionary, Second Edition* (1942). *The New Century Dictionary of the English Language* (1948) defines "vein" as "a body or mass of igneous rock, deposited mineral, or the like, occupying a crevice or fissure in rock." It has also been defined as "any body or stratum of ore, coal, etc." *The American Everyday Dictionary* (1955). These references are to solids—"ore" and "coal." Oil and gas are not solids.

{¶ 23} The dissent calls our attention to four cases from other states that refer to "veins of oil." *See* dissenting opinion, ¶ 41. But rather than undermining our conclusion, those cases reinforce the importance of context. For example, in *Bay v. Oklahoma S. Gas, Oil & Mining Co.*, 73 P. 936, 937, 940 (Okla. 1903), the court discussed drilling for oil, gas, and other minerals and described how certain claims could not be made "until some body or vein ha[d] been discovered from which the oil c[ould] be brought to the surface." In that context, "vein" undeniably referred to oil. Likewise, in *R.L. Cox & Co. v. J. H. Markham, Jr., & Co.*, 87 S.W. 1163, 1164 (Tex.Civ.App. 1905), the parties contracted for the drilling of a flow of oil and found a "vein" of oil. The agreement in *R.L. Cox* was about oil. Reference to a vein of oil makes sense in that context. Similarly, a witness testified in *S. Pacific Co. v. United States*, 249 F. 785, 795 (9th Cir. 1918), *rev'd on other grounds by United States v. Southern Pacific Co.*, 251 U.S. 1 (1919), that "there [was] a direction to that oil vein." Again, the context there was oil. And finally, in *Allen v. Derby Oil Co.*, 276 P. 53, 53 (Kan. 1929), the court referred to a "vein of oil." And the parties were talking about oil—apt words were used in the contract at issue there: "derrick, additional casing, tanks, engine, tubing and pump and all other

equipment, material and supplies necessary for producing and saving the oil and gas from said well . . . ." *Id.* at 80.

{¶ 24} In contrast to those cases cited by the dissent, the reservation here does not mention oil. Instead, it refers to "all the coal below the horizon of the No. 8 coal, *if* any under vein exists thereunder." (Emphasis added.) And the deed reserves to C.C. Fay "the right to transport other *coal of the same vein*." (Emphasis added).

{¶ 25} The canon of ejusdem generis is also instructive. This canon provides that when a statute lists specific items followed by a general term, the general term should be interpreted to include only items of the same nature as those specifically listed. *Gabbard v. Madison Local School Dist. Bd. of Edn.*, 2021-Ohio-2067, ¶ 26, 28; *see also Nielson v. Shinseki*, 607 F.3d 802, 807 (Fed.Cir. 2010), quoting *Airflow Technology, Inc. v. United States*, 524 F.3d 1287, 1292 (Fed.Cir. 2008) ("Even 'where a general term follows one expressly set forth specific term,' . . . application of the rule is appropriate.").

{¶ 26} In this case, in the phrase "coal or other minerals of any vein," "coal" is the specific item, and it is followed by the general term "other minerals of any vein." Applying the canon of ejusdem generis to this phrase, we conclude that "other minerals of any vein" is intended to include items of the same nature as "coal"—that is, a solid rock found in veins, rather than a liquid or gas extracted from a pool or reservoir.

{¶ 27} In short, in the context of the reservation clause at issue here, the use of the word "vein" indicates that the meaning of "other minerals" was limited to solids like coal. Thus, we conclude that in the reservation clause in this case, oil and gas were not included in the reservation.

### III. CONCLUSION

{¶ 28} Consistent with our precedent, the phrase "other minerals" may, but does not necessarily, include oil and gas. We look to the context in which the phrase

is used to determine what the parties intended. And here, the context leads us to conclude that the parties did not intend to include oil and gas in the reservation. We therefore affirm the judgment of the Seventh District Court of Appeals.

Judgment affirmed.

_____

**BRUNNER, J., dissenting.**

{¶ 29} I respectfully dissent from the majority opinion. This appeal requires us to interpret a reservation clause concerning subterranean mineral rights in a 1953 deed. In relevant part, the clause reserves to the grantor

> all the *coal* below the horizon of the No. 8 coal, if any under vein exists thereunder, *and other minerals*, with the right to mine and remove such *coal or other minerals of any vein*, using any convenient underground mining methods, and to transport coal and minerals from other premises through and under the surface of said lands . . . .

(Emphasis added.) This court's task is to decide whether this clause reserved the rights to oil and gas under the property by using the words "coal or other minerals of any vein" to describe the mineral rights granted by the deed. The majority opinion interprets the reservation clause as using language that is associated with the extraction of only *solid* minerals and thus concludes that oil and gas rights are not included in the reservation language. Majority opinion, ¶ 18-21. The majority opinion holds that the reservation clause at issue unambiguously excludes oil and gas from the phrase, "other minerals of any vein." *Id.* at ¶ 2, 8. I respectfully disagree. I view the reservation clause as being unambiguously *inclusive* of oil and gas because of language appearing in Article II, Section 36 of the Ohio Constitution.

{¶ 30} We have held that "a contract is unambiguous if it can be given a

12

definite legal meaning." *Westfield Ins. Co. v. Galatis*, 2003-Ohio-5849, ¶ 11. By contrast, "terms in a contract are ambiguous when they are susceptible to more than one reasonable interpretation." *Tera, L.L.C. v. Rice Drilling D, L.L.C.*, 2024-Ohio-1945, ¶ 12. That said, "[t]he mere fact that a contract's text might be subject to competing interpretations does not mean that the text is ambiguous." *Corder v. Ohio Edison Co.*, 2024-Ohio-5432, ¶ 14. A possible alternative interpretation that "'strain[s] ordinary usage or conflict[s] with the structure or purpose of the text as a whole,' . . . is not reasonable and does not make the contractual text ambiguous." (Bracketed text in original.) *Id.*, quoting *Corder v. Ohio Edison Co.*, 2020-Ohio-5220, ¶ 38 (DeWine, J., concurring in part and dissenting in part).

{¶ 31} The majority opinion concludes—with a scant discussion of legal principles relating to ambiguity—that the deed's reservation clause is unambiguous. In reaching its conclusion, the majority opinion utilizes an approach that is wholly inconsistent with the legal principles that relate to ambiguity. The majority opinion recognizes that two reasonable interpretations of the reservation clause exist—one that interprets "other minerals" to include oil and gas and one that does not—and then rests its finding that the clause is unambiguous on the conclusion that the latter interpretation is more common.

{¶ 32} The majority opinion expressly recognizes that the terms "'mine' and 'mining' *could* refer to oil and gas." (Emphasis added.) Majority opinion at ¶ 18 (subheading above paragraph). But, unconstrained by the law, the majority opinion leaps to the conclusion that those terms *would* include oil and gas only if additional language specific to oil and gas was used elsewhere in the reservation clause. Without such additional language, it reasons that the terms "mine" and "mining" refer only to solid substances.

{¶ 33} A number of court decisions from the first half of the twentieth century recognize the common-sense differences between the surface estate and surface rights. *See Jividen v. New Pittsburg Coal Co.*, 45 Ohio App. 294, 295-296

13

(4th Dist. 1933); *Chartiers Oil Co. v. Curtiss*, 24 Ohio C.D. 106, 107-112 (Cir.Ct. 1911). Those decisions also recognize a right separate from surface rights—the right to drill for minerals underlying the surface property. Surface and mineral rights need not belong to the same owner. *Chartiers Oil Co.* at 108 ("It is the settled law of Ohio that different estates may exist in the same real estate. The surface may belong to one owner, and the minerals underlying it may belong to other and different owners.").

{¶ 34} The Ohio Constitution itself also uses the term "mining" in a way that explicitly includes oil and gas. It explicitly refers to both oil and gas alongside the phrase "other minerals" in the context of mining, stating: "Laws may be passed . . . to provide for the regulation of methods of *mining*, weighing, measuring and marketing coal, *oil*, *gas and all other minerals*" (emphasis added), Ohio Const., art. II, § 36 (effective January 1, 1974). This foundational source of Ohio law describes oil and gas as "other minerals" and notably does so within the context of "mining." No additional words commonly associated with the extraction of oil and gas are used or needed to understand the meaning. Given that, I can reach no other conclusion: This court, having the final responsibility to determine what the Ohio Constitution says and how it should be applied, Ohio Const. art. IV, § 1, should read the phrase "other minerals" in the deed's reservation clause as including oil and gas.

{¶ 35} Even though the deed's reservation clause includes the additional phrase "of any vein" when referring to "other minerals," that additional phrase does not change the meaning of "other minerals" when viewed in light of how that same language is used in the Ohio Constitution. The language of Article II, Section 36 leaves nothing to interpret—the provision plainly uses the words "coal, oil, gas and all other minerals" in the context of "methods of mining." The majority opinion has caused this court to overstep its bounds. There is no need to interpret when one can simply read the language and apply it. *See Krewina v. United Specialty Ins.*

*Co.*, 2023-Ohio-2343, ¶ 23.

{¶ 36} An examination of how the majority opinion reaches its conclusion is in order so future decisions do not repeat this flawed process. The majority opinion cites a dictionary definition from 1948 and a decision this court issued in 1944, both published near the time the deed was executed in 1953. In each instance, the terms "mine" and "mining" were used in a way that refers only to solid minerals. Majority opinion at ¶ 18-19. However, in this instance, the Ohio Constitution provides us all the guidance we need to fairly decide the case, and so there is no need for the majority opinion to create its own definition of "other minerals" by essentially cherry-picking historical definitions that support its conclusion and then using its own definition to determine what the reservation clause means.

{¶ 37} Further, there is no analysis in the majority opinion that even purports to include a comprehensive review of all sources published near the time the deed was executed. And even more troubling, there is little to no analysis of *how* and *why* these sources were selected to divine the legal meaning of the words in the deed. The dearth of analysis in interpreting this deed shakes public confidence in the integrity and reliability of our jurisprudence.

{¶ 38} The Ohio Constitution's definition of oil and gas as a mineral is the stated will of the people of the State of Ohio as of 1974, when Article II, Section 36 became effective. *See* Ohio Const., art. II, § 36 (referring to "coal, oil, gas and all other minerals"); *see also* Ohio Const., art. I, § 2 ("All political power is inherent in the people."); Ohio Const., art. IV, § 2 (setting out the organization and jurisdiction of this court). An analysis that finds the reservation clause unambiguous simply because one meaning of a word or phrase was *more common* than another at the time of the reservation is not even an originalism analysis in the classic constitutional context as described in of the writings of former United States Supreme Court Justice Antonin Scalia, especially when that analysis is so incomplete.

**{¶ 39}** This ill-advised use of not carefully considered or imprecise historical sources to interpret contracts, especially contracts involving real estate and mineral rights, neither of which is renewable or regenerative, illustrates the danger of using originalism to select a meaning. It is unclear whether the majority opinion is engaging in original-intent originalism, focusing on the intentions of the drafter, or original-public-meaning originalism, focusing on how the text would have been understood by an ordinary person at the time the language became law. Regardless, the majority opinion has abused its judicial discretion by needlessly constraining it and anchoring its interpretation in historical facts about meaning and then declaring the meaning unambiguous with an originalist approach. And all of this has occurred without reference to caselaw about contract-language ambiguity and in disregard of language in the state Constitution defining the terms in question.

**{¶ 40}** As a bootstrap, the majority opinion points to the clause's reservation of the right to remove minerals "of any vein" as support for its conclusion that the clause does not include oil and gas. At first glance, this appears to be a fair issue to consider. However, the key language in the Ohio Constitution cannot and should not be parsed when the only language modifying it is descriptive and not substantive. The majority opinion states that, at the time of the reservation at issue here, "'[v]ein' was commonly understood to refer to 'a *vein* of coal.'" (Emphasis in *Webster's*.) Majority opinion at ¶ 22, quoting *Webster's New International Dictionary, Second Edition* (1942). Again, cherry-picking historical sources, the majority opinion points to three dictionaries from the middle of the twentieth century, all of which defined "vein" by referring to solid substances. *Id.* Based on those definitions, it suggests that because "[o]il and gas are not solids," they are not found in veins. *Id.*

**{¶ 41}** I have no reason to disagree with the suggestion that the term "vein" was sometimes or perhaps "commonly" used to refer to solid substances. But I depart from the majority opinion because there are a substantial number of sources

16

from around the time the deed was executed indicating that "vein" was *also* understood to have a meaning that *did* refer to oil and gas. For example, numerous cases from the early twentieth century refer to "vein[s] of oil." *See, e.g.*, *Bay v. Oklahoma S. Gas, Oil & Mining Co.*, 13 Okla. 425, 429 (1903) ("he moved his drill onto said land, and drilled a well 43 feet deep, when he struck a vein of oil"); *R.L. Cox & Co. v. J. H. Markham, Jr., & Co.*, 87 S.W. 1163, 1164 (Tex.Civ.App. 1905) ("a flow or vein of oil was found in the well"); *S. Pacific Co. v. United States*, 249 F. 785, 795 (9th Cir. 1918) (quoting a government witness who had stated, "'You find that among oil men because experience has taught that there is a direction to that oil vein.'"), *reversed on other grounds by United States v. S. Pacific Co.*, 251 U.S. 1 (1919); *Allen v. Derby Oil Co.*, 276 P. 53, 53 (Kan. 1929) ("in a few weeks [the driller] had drilled the prospect hole down to 3,187 feet, at which level a vein of oil was struck").

{¶ 42} The appellants have also pointed to a plethora of other sources spanning the mid-1800s to the present day that similarly used the term "vein" to refer to oil and gas. *See, e.g.*, Byron D. Magbee and Robert L. Alkire, *Oil and Gas in Morgan County*, State of Ohio Department of Natural Resources, Natural Resources Commission, Division of Geological Survey, Report of Investigations No. 22, Petroleum and Natural Gas Series No. 6, 30 (1954), available at https://dam.assets.ohio.gov/image/upload/ohiodnr.gov/documents/geology/RI22_ Magbee_1954.pdf (accessed July 16, 2025) [https://perma.cc/V3NQ-RHTG] ("after drilling to a depth of 71 feet struck a vein of oil"); *Twenty-Five Years Ago; Anniversary of Col. Drake's Discovery of Petroleum. The First Vein of Oil Struck at Titusville Aug. 28, 1859, and More Than $400,000,000 Invested Since*, New York Times 5 (Aug. 28, 1884); *Striking a Vein of Gas*, New York Times 3 (March 4, 1880) ("Freeberg & Workum, in drilling for water at their distillery yesterday, at a depth of 274 feet, struck a strong vein of sulphureted hydrogen gas."); Ken Silverstein, *Some Oil And Gas Companies May Want The Rights To Drill In The*

*Arctic Refuge While Trump ls In Office*, Forbes (Sept. 4, 2019), available at https://www.forbes.com/sites/kensilverstein/2019/09/04/leasing-the-arctic-refuge-to-oil-and-gas-drillers-while-the-political-climate-is-hot-is-galvanizing-the-troops/ (accessed July 16, 2025) [https://perma.cc/YH5R-H4CK] ("if the region is a rich vein of oil and gas, it could—one day—be worth billions").

{¶ 43} These sources are relevant because they demonstrate that interpreting "vein" to refer to oil and gas is *reasonable*, does not strain ordinary usage, and is consistent with the text in the state Constitution. That in turn means that the deed's reservation clause is subject to a reasonable and unambiguous interpretation that oil and gas are included as "other minerals" distinct from coal.

{¶ 44} It is unacceptable and unforgivable that the majority opinion has diverted its analysis from the source of this court's power, the Ohio Constitution, and succumbed to the temptation to follow the United States Supreme Court down a path that has undermined public confidence in the courts—making up methods of analysis that satisfy political thirsts for power in the name of the rule of law. Under the rule of law, no interpretive mechanism such as originalism should be applied by a court to supply an advantage to one side or person. The rule of law exists to render fairness in human endeavors and to allow individuals to live peaceably among one another with predictability and safety; when carefully tended, it can be a springboard for their individual pursuits of happiness. In a democracy governed by the rule of law, members of that society inherently recognize that there is something greater than themselves in the law. When the keepers of the rule of law remember that they work in service to the people, the law works without favor to either liberal or conservative views, for the good of all people. It should be this court's aim in exercising its power to follow the will of the people expressed in this State's founding document. Sadly, today's decision fails the people, abuses the court's power, and in doing so, erodes freedom.

{¶ 45} For the reasons I have stated in this separate opinion, I respectfully

dissent from the majority opinion and would hold that the 1953 deed that includes the language "coal or other minerals of any vein" includes the reservation of oil and gas.

––––––––––––––––––––

Kidder Law Firm, L.L.C., Charles L. Kidder, Steven R.R. Anderson, and Madison J. Gregory, for appellants Sidney Turner, Michele M. Lazzaro, Esq., Trustee, and Marilyn Stolz.

Edward M. Janis Co., L.P.A., and Edward M. Janis, for appellants James M. Roller and Laurie Edna Evanko.

Frankovitch, Anetakis, Simon, Decapio & Pearl, L.L.P., Michael G. Simon, and Carl A. Frankovitch; and Robinson Law Firm L.L.C., and Emmett E. Robinson, for appellee, Faith Ranch and Farms Fund, Inc.

––––––––––––––––––––